**UNITED STATES of America, Plaintiff–Appellee,**

v.

**David John DECKER, Defendant–Appellant.**

**No. 93–2375.**

United States Court of Appeals, Sixth Circuit.

Argued March 1, 1994.

Decided March 21, 1994.

Richard S. Murray, Asst. U.S. Attorney (argued and briefed), Grand Rapids, MI, for plaintiff-appellee.

Jeffrey O'Hara (argued and briefed), Grand Rapids, MI, for defendant-appellant.

Before: KENNEDY and GUY, Circuit Judges; and CONTIE, Senior Circuit Judge.

PER CURIAM.

Defendant, David Decker, was convicted of conspiracy to manufacture MDA,[1] a controlled substance. One item of evidence introduced against defendant during trial was found in an inventory search of his vehicle. Defendant argues that this search was illegal and that this item of evidence accordingly should have been suppressed.[2]

Defendant also argues that the trial judge erred when he responded to a jury inquiry by telling the jury that defendant could be found guilty of this conspiracy if he knew its purpose was to illegally manufacture a controlled substance, even if he did not know the substance was MDA.

After completing our review, we find no error requiring reversal, and affirm.

**I.**

In the fall of 1992, defendant agreed to help Dr. Tony Scalici, a family practice physician, manufacture MDA. Dr. Scalici conceived the idea for this illicit venture after a trip to California, during which he obtained a book entitled *Secrets of Methamphetamine Manufacture.* The book details a process for amphetamine manufacture using a method called the Ritter reaction and describes a

---

1. MDA is 3,4–methylenedioxyamphetamine, a stimulant hallucinogen.

2. Decker filed a timely pretrial suppression motion, which was denied.

modification of the Ritter technique that will produce MDA.

Unfortunately for both Scalici and Decker, Scalici tried to enlist the support of Dr. James Byers, a physician with whom he practiced. Byers, although feigning interest, immediately contacted the FBI. From this point forward, many of the meetings and discussions among the participants were tape recorded by Byers and surveilled by the FBI.

One of Decker's contributions to this plan was to provide the manufacture location, an unused summer cottage belonging to his father. On November 11, 1992, Byers accompanied Scalici in Scalici's car to the cottage, followed by Decker in his own car. The cottage already had been stocked with most of the necessary precursor chemicals and equipment. Scalici was bringing the remaining necessary chemicals and Decker stopped en route to pick up two bags of ice to be used to dissipate the heat generated by the Ritter reaction.

The FBI, alerted by Byers, was waiting for the trio to arrive. Shortly after the trio's arrival, the agents arrested Scalici and Decker, searched the cottage pursuant to a search warrant, and seized both vehicles. The vehicles, although included in the search warrant, were not searched at this time but instead were taken to the FBI garage and impounded. The FBI agent who impounded the vehicles said his intention was to conduct an inventory search of both vehicles and institute forfeiture proceedings.

The agent testified at trial that a very busy work schedule kept him from conducting the inventory search until November 18, 1992. By that date, the authority to search provided in the search warrant had expired. In Scalici's Cadillac, the agent found several items of evidentiary value, including a beeper, an address book, pyrex pitchers, lye, and a sales receipt. In Decker's car, the agent found some horse steroids[3] and ice bags, which were empty but wet.

Scalici and Decker were indicted shortly after their arrest, and, prior to trial, each of them filed a motion to suppress the evidence seized in the inventory search. Decker also joined in Scalici's motion relative to the search of Scalici's Cadillac. After an evidentiary hearing, both motions were denied; the court concluded that the items in question were found pursuant to a valid inventory search.

Dr. Scalici was convicted at trial, but the jury was unable to reach a unanimous verdict as to Decker. Decker was tried again, on a superseding indictment, and this time was found guilty of conspiracy.[4] During jury deliberation, the jury sent out the following note:

> There is some confusion as to the contents of the jury instructions. Specifically in the description of conspiracy, Page 26, it is stated that first two or more persons conspired to commit the crime of manufacturing MDA. Is it vital that the defendant knew which specific drug·was being manufactured, even if the defendant was unaware that it was illegal?

The trial judge, after consulting with counsel but over the objection of defense counsel, responded:

> In this particular case, it is not necessary that the defendant knew specifically that the alleged conspiracy involved the attempted manufacture of MDA as long as the defendants knew, one or more of these defendants knew that—or I should say each defendant knew that what was being attempted to be manufactured was a controlled, illegal substance or an illegal controlled substance.
>
> So, to summarize, it is not necessary that the defendants knew specifically that the product to be manufactured was MDA as long as—if they knew that what was attempted to be manufactured was an illegal controlled substance.

The jury found Decker guilty of conspiracy.

## II.

Although Decker joined in Scalici's motion challenging the search of Scalici's auto, we

---

3. The horse steroids were not introduced at trial and are not involved in this appeal.

4. A second count was dismissed by the court on defendant's motion.

find that, since Decker had no expectation of privacy or property interest in Scalici's auto, he has no standing to challenge its search.

As to Decker's car, we find that the district judge properly denied the motion to suppress, and, even if the motion were improperly denied, we find the admission into evidence of the two empty ice bags was harmless as a matter of law. This latter conclusion is bottomed on the other significant evidence introduced against Decker and the relatively inconsequential nature of the two empty ice bags. Through Dr. Byers' testimony, the jury learned that Decker had agreed to bring ice to the house. If the testimony of Dr. Byers was credited by the jury, this alone was enough to support the conspiracy conviction.

■ Despite the fact that the car Decker was driving belonged to his wife,[5] the government concedes Decker's standing relative to this auto. We believe the search of this auto can be justified on two grounds, only one of which was relied upon by the trial judge.

The trial judge found this to be a valid inventory search notwithstanding the fact that a week elapsed between the initial impoundment and the search. The Supreme Court long ago established that a valid inventory search conducted without a warrant does not violate the Fourth Amendment. In discussing inventory searches, the Court stated in *South Dakota v. Opperman*, 428 U.S. 364, 372, 96 S.Ct. 3092, 3098, 49 L.Ed.2d 1000 (1976):

> The decisions of this Court point unmistakably to the conclusion reached by both federal and state courts that inventories pursuant to standard police procedures are reasonable. In the first such case, Mr. Justice Black made plain the nature of the inquiry before us:
>
> "But the question here is not whether the search was *authorized* by state law. The question is rather whether the search was *reasonable* under the Fourth Amendment."

The Court in *Opperman* went on to state in language more specific to the instant case:

> In applying the reasonableness standard adopted by the Framers, this Court has consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents. In *Cooper v. California* [386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967)], the Court upheld the inventory of a car impounded under the authority of a state forfeiture statute. Even though the inventory was conducted in a distinctly criminal setting and carried out a week after the car had been impounded, the Court nonetheless found that the car search, including examination of the glove compartment where contraband was found, was reasonable under the circumstances. This conclusion was reached despite the fact that no warrant had issued and probable cause to search for the contraband in the vehicle had not been established.

*Id.* 428 U.S. at 373, 96 S.Ct. at 3099 (footnote omitted).

■ Decker really does not challenge the well-established law in this area, but argues that, under *Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990), an inventory search is improper if conducted for investigatory objectives. Although defendant's statement of the law is correct, the attempt to apply this legal principle to these facts fails. Defendant does not challenge the seizure of his vehicle. At the time the vehicle was seized, the officers were in possession of a valid search warrant authorizing vehicular searches. If gathering evidence was their only motive, the FBI could have searched both cars the very day they were impounded, or any day thereafter during the life of the warrant. Accordingly, we believe the district judge correctly resolved the credibility issue when he credited the agent's testimony that this was an inventory search.

---

5. In *United States v. Metzger*, 778 F.2d 1195, 1200 (6th Cir.1985), *cert. denied*, 477 U.S. 906, 106 S.Ct. 3279, 91 L.Ed.2d 568 (1986), we stat-

ed: "We fail to see how defendant ... had a reasonable expectation of privacy in his wife's personal vehicle."

**290**

In addition to being justified as a regular inventory search,[6] the search can be sustained as incident to an intended forfeiture proceeding. In *United States v. Pace,* 898 F.2d 1218 (7th Cir.1990), the court stated:

> In *Cooper,* police had impounded a car pursuant to a state forfeiture statute. About one week after seizing the car, the police searched the car's glove compartment without a warrant (or, apparently, probable cause) and found incriminating evidence. The Court held that the search did not violate the Fourth Amendment.
>
> . . . .
>
> While the Supreme Court has not definitely described *Cooper's* scope, the federal courts of appeals that have had to apply *Cooper* and its progeny, including this court, have overwhelmingly read *Cooper* broadly. The cases generally hold that where police have probable cause to believe a car is subject to forfeiture, or have validly seized a car for forfeiture, the policy may search the car without a warrant. As this court recently noted in *Alvarez,* "once a vehicle is validly seized for forfeiture, it can be searched *at will,* without a warrant."

*Pace,* 898 F.2d at 1244–45 (citations omitted) (emphasis in original).

Our circuit apparently never has had occasion to specifically discuss this issue in a published opinion,[7] but we have no hesitancy in joining those circuits that hold that a pre-forfeiture inventory search of a vehicle does not require a warrant.[8]

### III.

The jury was told in response to an inquiry that, as long as defendant knew the manufacture of an illegal substance was planned, he need not specifically know that the illegal substance was MDA. In instructing the jury on this point, the court relied on *United States v. Marsh,* 894 F.2d 1035 (9th Cir. 1989), *cert. denied,* 493 U.S. 1083, 110 S.Ct. 1143, 107 L.Ed.2d 1048 (1990). In *Marsh,* the court held:

> Instruction Number 7 implies, correctly, that the Marshes could have knowingly attempted or conspired to manufacture 4–methyl aminorex, even if they did not know exactly what it was, as long as they knew it was a controlled substance.

*Id.* at 1041.

We believe *Marsh* to be a correct statement of the law and appropriate authority to support the trial court's instruction *in this case.*[9]

**AFFIRMED.**

---

6. Defendant alludes to certain departures from procedure that occurred during this inventory search. We find such departures, as did the district judge, to be without significance.

7. We have acknowledged this principle with approval in unpublished decisions. *See, e.g., United States v. Stewart,* 922 F.2d 842 (6th Cir.1991).

8. The record does not disclose whether the government ever actually forfeited Decker's wife's car. It is possible that an innocent owner's defense may have been available to Decker's wife. This fact does not change our analysis, however.

9. This does not mean, however, that the government could charge a cocaine conspiracy and then proceed to prove a marijuana conspiracy. Here, the manufacturing process was crude and would not always yield the exact same chemical compound. For this reason, the superseding indictment properly charged MDA, its salts, isomers, salts of isomers and analogues. Expert witness Poole testified that MDMA is an analogue of MDA.