# FLORIDA *v.* WHITE

No. 98–223.   Argued March 23, 1999—Decided May 17, 1999

THOMAS, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, SCALIA, KENNEDY, SOUTER, and BREYER, JJ., joined. SOUTER, J., filed a concurring opinion, in which BREYER, J., joined, *post*, p. 566. STEVENS, J., filed a dissenting opinion, in which GINSBURG, J., joined, *post*, p. 567.

*Carolyn Snurkowski*, Assistant Deputy Attorney General of Florida, argued the cause for petitioner. With her on the briefs were *Robert A. Butterworth*, Attorney General, and *Daniel A. David*, Assistant Attorney General.

*Malcolm L. Stewart* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Waxman, Assistant Attorney General Robinson, Deputy Solicitor General Dreeben*, and *Kathleen A. Felton*.

*David P. Gauldin* argued the cause for respondent. With him on the brief were *David A. Davis* and *Michael J. Minerva.**

---

*A brief of *amici curiae* urging reversal was filed for the State of Arkansas et al. by *Winston Bryant*, Attorney General of Arkansas, *David R. Raupp*, Senior Assistant Attorney General, and *Dan Schweitzer*, and by the Attorneys General for their respective States as follows: *Bill Lockyer* of California, *M. Jane Brady* of Delaware, *Thurbert E. Baker* of Georgia, *Margery S. Bronster* of Hawaii, *Alan G. Lance* of Idaho, *James E. Ryan* of Illinois, *Jeffrey A. Modisett* of Indiana, *Thomas J. Miller* of Iowa, *Carla J. Stovall* of Kansas, *J. Joseph Curran, Jr.*, of Maryland, *Jennifer M. Granholm* of Michigan, *Joseph P. Mazurek* of Montana, *Don Stenberg* of Nebraska, *Frankie Sue Del Papa* of Nevada, *Peter Verniero* of New Jersey, *Heidi Heitkamp* of North Dakota, *Betty D. Montgomery* of Ohio, *W. A. Drew Edmondson* of Oklahoma, *Mike Fisher* of Pennsylvania, *Charles M. Condon* of South Carolina, *Mark Barnett* of South Dakota, *Paul G. Summers* of Tennessee, *Jan Graham* of Utah, *Mark L. Earley*

JUSTICE THOMAS delivered the opinion of the Court.

The Florida Contraband Forfeiture Act provides that certain forms of contraband, including motor vehicles used in violation of the Act's provisions, may be seized and potentially forfeited. In this case, we must decide whether the Fourth Amendment requires the police to obtain a warrant before seizing an automobile from a public place when they have probable cause to believe that it is forfeitable contraband. We hold that it does not.

## I

On three occasions in July and August 1993, police officers observed respondent Tyvessel Tyvorus White using his car to deliver cocaine, and thereby developed probable cause to believe that his car was subject to forfeiture under the Florida Contraband Forfeiture Act (Act), Fla. Stat. § 932.701 *et seq.* (1997).[1] Several months later, the police arrested respondent at his place of employment on charges unrelated to the drug transactions observed in July and August 1993. At the same time, the arresting officers, without securing a warrant, seized respondent's automobile in accordance with the provisions of the Act. See § 932.703(2)(a).[2] They seized the

---

of Virginia, *Christine O. Gregoire* of Washington, and *Gay Woodhouse* of Wyoming.

*Richard J. Troberman* and *Lisa B. Kemler* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae* urging affirmance.

[1] That Act provides, in relevant part: "Any contraband article, vessel, motor vehicle, aircraft, other personal property, or real property used in violation of any provision of the Florida Contraband Forfeiture Act, or in, upon, or by means of which any violation of the Florida Contraband Forfeiture Act has taken or is taking place, may be seized and shall be forfeited." Fla. Stat. § 932.703(1)(a) (1997).

[2] Nothing in the Act requires the police to obtain a warrant prior to seizing a vehicle. See *State* v. *Pomerance*, 434 So. 2d 329, 330 (Fla. App. 1983). Rather, the Act simply provides that "[p]ersonal property

vehicle solely because they believed that it was forfeitable under the Act. During a subsequent inventory search, the police found two pieces of crack cocaine in the ashtray. Based on the discovery of the cocaine, respondent was charged with possession of a controlled substance in violation of Florida law.

At his trial on the possession charge, respondent filed a motion to suppress the evidence discovered during the inventory search. He argued that the warrantless seizure of his car violated the Fourth Amendment, thereby making the cocaine the "fruit of the poisonous tree." The trial court initially reserved ruling on respondent's motion, but later denied it after the jury returned a guilty verdict. On appeal, the Florida First District Court of Appeal affirmed. 680 So. 2d 550 (1996). Adopting the position of a majority of state and federal courts to have considered the question, the court rejected respondent's argument that the Fourth Amendment required the police to secure a warrant prior to seizing his vehicle. *Id.*, at 554. Because the Florida Supreme Court and this Court had not directly addressed the issue, the court certified to the Florida Supreme Court the question whether, absent exigent circumstances, the warrantless seizure of an automobile under the Act violated the Fourth Amendment. *Id.*, at 555.

In a divided opinion, the Florida Supreme Court answered the certified question in the affirmative, quashed the First District Court of Appeal's opinion, and remanded. 710 So. 2d 949, 955 (1998). The majority of the court concluded that, absent exigent circumstances, the Fourth Amendment requires the police to obtain a warrant prior to seizing prop-

---

may be seized at the time of the violation or subsequent to the violation, if the person entitled to notice is notified at the time of the seizure . . . that there is a right to an adversarial preliminary hearing after the seizure to determine whether probable cause exists to believe that such property has been or is being used in violation of the Florida Contraband Forfeiture Act." § 932.703(2)(a).

erty that has been used in violation of the Act. *Ibid.* According to the court, the fact that the police develop probable cause to believe that such a violation occurred does not, standing alone, justify a warrantless seizure. The court expressly rejected the holding of the Eleventh Circuit, see *United States* v. *Valdes,* 876 F. 2d 1554 (1989), and the majority of other Federal Circuits to have addressed the same issue in the context of the federal civil forfeiture law, 21 U. S. C. § 881, which is similar to Florida's. See *United States* v. *Decker,* 19 F. 3d 287 (CA6 1994) *(per curiam); United States* v. *Pace,* 898 F. 2d 1218, 1241 (CA7 1990); *United States* v. *One 1978 Mercedes Benz,* 711 F. 2d 1297 (CA5 1983); *United States* v. *Kemp,* 690 F. 2d 397 (CA4 1982); *United States* v. *Bush,* 647 F. 2d 357 (CA3 1981). But see *United States* v. *Dixon,* 1 F. 3d 1080 (CA10 1993); *United States* v. *Lasanta,* 978 F. 2d 1300 (CA2 1992); *United States* v. *Linn,* 880 F. 2d 209 (CA9 1989). We granted certiorari, 525 U. S. 1000 (1998), and now reverse.

## II

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and further provides that "no Warrants shall issue, but upon probable cause." U. S. Const., Amdt. 4. In deciding whether a challenged governmental action violates the Amendment, we have taken care to inquire whether the action was regarded as an unlawful search and seizure when the Amendment was framed. See *Wyoming* v. *Houghton, ante,* at 299; *Carroll* v. *United States,* 267 U. S. 132, 149 (1925) ("The Fourth Amendment is to be construed in light of what was deemed an unreasonable search and seizure when it was adopted, and in a manner which will conserve public interests as well as the interests and rights of individual citizens").

In *Carroll,* we held that when federal officers have probable cause to believe that an automobile contains contraband,

the Fourth Amendment does not require them to obtain a warrant prior to searching the car for and seizing the contraband. Our holding was rooted in federal law enforcement practice at the time of the adoption of the Fourth Amendment. Specifically, we looked to laws of the First, Second, and Fourth Congresses that authorized federal officers to conduct warrantless searches of ships and to seize concealed goods subject to duties. *Id.*, at 150–151 (citing Act of July 31, 1789, §§ 24, 29, 1 Stat. 43; Act of Aug. 4, 1790, § 50, 1 Stat. 170; Act of Feb. 18, 1793, § 27, 1 Stat. 315; Act of Mar. 2, 1799, §§ 68–70, 1 Stat. 677, 678). These enactments led us to conclude that "contemporaneously with the adoption of the Fourth Amendment," Congress distinguished "the necessity for a search warrant between goods subject to forfeiture, when concealed in a dwelling house or similar place, and like goods in course of transportation and concealed in a movable vessel where they readily could be put out of reach of a search warrant." 267 U. S., at 151.

The Florida Supreme Court recognized that under *Carroll*, the police could search respondent's car, without obtaining a warrant, if they had probable cause to believe that it contained contraband. The court, however, rejected the argument that the warrantless seizure of respondent's vehicle *itself* also was appropriate under *Carroll* and its progeny. It reasoned that "[t]here is a vast difference between permitting the immediate search of a movable automobile based on actual knowledge that it then contains contraband [and] the discretionary seizure of a citizen's automobile based upon a belief that it may have been used at some time in the past to assist in illegal activity." 710 So. 2d, at 953. We disagree.

The principles underlying the rule in *Carroll* and the founding-era statutes upon which they are based fully support the conclusion that the warrantless seizure of respondent's car did not violate the Fourth Amendment. Although, as the Florida Supreme Court observed, the police lacked

probable cause to believe that respondent's car contained contraband, see 710 So. 2d, at 953, they certainly had probable cause to believe that the vehicle *itself* was contraband under Florida law.[3]  Recognition of the need to seize readily movable contraband before it is spirited away undoubtedly underlies the early federal laws relied upon in *Carroll.*  See 267 U. S., at 150–152; see also *California* v. *Carney,* 471 U. S. 386, 390 (1985); *South Dakota* v. *Opperman,* 428 U. S. 364, 367 (1976).  This need is equally weighty when the *automobile,* as opposed to its contents, is the contraband that the police seek to secure.[4]  Furthermore, the early federal statutes that we looked to in *Carroll,* like the Florida Contraband Forfeiture Act, authorized the warrantless seizure of *both* goods subject to duties *and* the ships upon which those goods were concealed.  See, *e. g.,* 1 Stat. 43, 46; 1 Stat. 170, 174; 1 Stat. 677, 678, 692.

In addition to the special considerations recognized in the context of movable items, our Fourth Amendment jurisprudence has consistently accorded law enforcement officials greater latitude in exercising their duties in public places. For example, although a warrant presumptively is required for a felony arrest in a suspect's home, the Fourth Amendment permits warrantless arrests in public places where an officer has probable cause to believe that a felony has occurred.  See *United States* v. *Watson,* 423 U. S. 411, 416–424 (1976).  In explaining this rule, we have drawn upon the es-

---

[3] The Act defines "contraband" to include any "vehicle of any kind, . . . which was used . . . as an instrumentality in the commission of, or in aiding or abetting in the commission of, any felony."  § 932.701(2)(a)(5).

[4] At oral argument, respondent contended that the delay between the time that the police developed probable cause to seize the vehicle and when the seizure actually occurred undercuts the argument that the warrantless seizure was necessary to prevent respondent from removing the car out of the jurisdiction.  We express no opinion about whether excessive delay prior to a seizure could render probable cause stale, and the seizure therefore unreasonable under the Fourth Amendment.

tablished "distinction between a warrantless seizure in an open area and such a seizure on private premises." *Payton* v. *New York*, 445 U. S. 573, 587 (1980); see also *id.*, at 586–587 ("It is also well settled that objects such as weapons or contraband found in a public place may be seized by the police without a warrant"). The principle that underlies *Watson* extends to the seizure at issue in this case. Indeed, the facts of this case are nearly indistinguishable from those in *G. M. Leasing Corp.* v. *United States*, 429 U. S. 338 (1977). There, we considered whether federal agents violated the Fourth Amendment by failing to secure a warrant prior to seizing automobiles in partial satisfaction of income tax assessments. *Id.*, at 351. We concluded that they did not, reasoning that "[t]he seizures of the automobiles in this case took place on public streets, parking lots, or other open places, and did not involve any invasion of privacy." *Ibid.* Here, because the police seized respondent's vehicle from a public area—respondent's employer's parking lot—the warrantless seizure also did not involve any invasion of respondent's privacy. Based on the relevant history and our prior precedent, we therefore conclude that the Fourth Amendment did not require a warrant to seize respondent's automobile in these circumstances.

The judgment of the Florida Supreme Court is reversed, and the case is remanded for proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE SOUTER, with whom JUSTICE BREYER joins, concurring.

I join the Court's opinion subject to a qualification against reading our holding as a general endorsement of warrantless seizures of anything a State chooses to call "contraband," whether or not the property happens to be in public when seized. The Fourth Amendment does not concede any talis-

manic significance to use of the term "contraband" whenever a legislature may resort to a novel forfeiture sanction in the interest of law enforcement, as legislatures are evincing increasing ingenuity in doing, cf., *e. g.*, *Bennis* v. *Michigan*, 516 U. S. 442, 443–446 (1996); *id.*, at 458 (STEVENS, J., dissenting); *United States* v. *James Daniel Good Real Property*, 510 U. S. 43, 81–82, and n. 1 (1993) (THOMAS, J., concurring in part and dissenting in part) (expressing concern about the breadth of new forfeiture statutes). Moreover, *G. M. Leasing Corp.* v. *United States*, 429 U. S. 338 (1977) (upon which we rely today), endorsed the public character of a warrantless seizure scheme by reference to traditional enforcement of government revenue laws, *id.*, at 351–352, and n. 18 (citing, *e. g.*, *Murray's Lessee* v. *Hoboken Land & Improvement Co.*, 18 How. 272 (1856)), and the legality of seizing abandoned contraband in public view, 429 U. S., at 352 (citing *Hester* v. *United States*, 265 U. S. 57 (1924)).

JUSTICE STEVENS, with whom JUSTICE GINSBURG joins, dissenting.

During the summer of 1993, Florida police obtained evidence that Tyvessel White was engaged in the sale and delivery of narcotics, and that he was using his car to facilitate the enterprise. For reasons unexplained, the police neither arrested White at that point nor seized his automobile as an instrumentality of his alleged narcotics offenses. Most important to the resolution of this case, the police did not seek to obtain a warrant before seizing White's car that fall—over two months after the last event that justified the seizure. Instead, after arresting White at work on an unrelated matter and obtaining his car keys, the officers seized White's automobile without a warrant from his employer's parking lot and performed an inventory search. The Florida Supreme Court concluded that the seizure, which took place absent exigent circumstances or probable cause to be-

lieve that narcotics were present, was invalid. 710 So. 2d 949 (1998).[1]

In 1971, after advising us that "we must not lose sight of the Fourth Amendment's fundamental guarantee," Justice Stewart made this comment on what was then settled law:

> "[T]he most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' The exceptions are 'jealously and carefully drawn,' and there must be 'a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative.' '[T]he burden is on those seeking the exemption to show the need for it.'" *Coolidge* v. *New Hampshire*, 403 U. S. 443, 453, 454–455 (footnotes omitted).

Because the Fourth Amendment plainly "protects property as well as privacy" and seizures as well as searches, *Soldal* v. *Cook County*, 506 U. S. 56, 62–64 (1992), I would apply to the present case our longstanding warrant presumption.[2]

---

[1] The Florida Supreme Court's opinion could be read to suggest that due process protections in the Florida Constitution might independently require a warrant or other judicial process before seizure under the Florida Contraband Forfeiture Act. See 710 So. 2d, at 952 (discussing *Department of Law Enforcement* v. *Real Property*, 588 So. 2d 957 (1991)). However, the certified question put to that court referred only to the Fourth Amendment to the United States Constitution. 710 So. 2d, at 950. Thus, a viable federal question was presented for us to decide on certiorari, but of course we have no authority to determine the limits of state constitutional or statutory safeguards.

[2] *E. g., United States* v. *United States Dist. Court for Eastern Dist. of Mich.*, 407 U. S. 297, 315–318 (1972) ("Though the Fourth Amendment speaks broadly of 'unreasonable searches and seizures,' the definition of 'reasonableness' turns, at least in part, on the more specific commands of the warrant clause"); *Coolidge* v. *New Hampshire*, 403 U. S. 443, 454–455 (1971); *Katz* v. *United States*, 389 U. S. 347, 357 (1967); *Johnson* v. *United*

In the context of property seizures by law enforcement authorities, the presumption might be overcome more easily in the absence of an accompanying privacy or liberty interest. Nevertheless, I would look to the warrant clause as a measure of reasonableness in such cases, *United States* v. *United States Dist. Court for Eastern Dist. of Mich.*, 407 U. S. 297, 315 (1972), and the circumstances of this case do not convince me that the role of a neutral magistrate was dispensable.

The Court does not expressly disavow the warrant presumption urged by White and followed by the Florida Supreme Court, but its decision suggests that the exceptions have all but swallowed the general rule. To defend the officers' warrantless seizure, the State points to cases establishing an "automobile exception" to our ordinary demand for a warrant before a lawful search may be conducted. Each of those cases, however, involved searches of automobiles for contraband or temporary seizures of automobiles to effect such searches.[3] Such intrusions comport with the practice

---

*States*, 333 U. S. 10, 13–14 (1948); *Harris* v. *United States*, 331 U. S. 145, 162 (1947) (Frankfurter, J., dissenting) ("[W]ith minor and severely confined exceptions, inferentially a part of the Amendment, every search and seizure is unreasonable when made without a magistrate's authority expressed through a validly issued warrant"), overruled in part by *Chimel* v. *California*, 395 U. S. 752 (1969); see also *Shadwick* v. *Tampa*, 407 U. S. 345, 348 (1972) (noting "the now accepted fact that someone independent of the police and prosecution must determine probable cause"); *Wong Sun* v. *United States*, 371 U. S. 471, 481–482 (1963).

[3] See, *e. g.*, *Carroll* v. *United States*, 267 U. S. 132, 153 (1925) (where the police have probable cause, "contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant"); *United States* v. *Ross*, 456 U. S. 798, 820, n. 26, 825 (1982) ("During virtually the entire history of our country—whether contraband was transported in a horse-drawn carriage, a 1921 roadster, or a modern automobile—it has been assumed that a lawful search of a vehicle would include a search of any container that might conceal the object of the search"); *Wyoming* v. *Houghton*, *ante*, at 300–301; *Pennsylvania* v. *Labron*, 518 U. S. 938, 940 (1996) *(per curiam)* ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more").

of federal customs officers during the Nation's early history on which the majority relies, as well as the practicalities of modern life. But those traditions and realities are weak support for a warrantless seizure of the vehicle itself, months after the property was proverbially tainted by its physical proximity to the drug trade, and while the owner is safely in police custody.

The stated purposes for allowing warrantless vehicle searches are likewise insufficient to validate the seizure at issue, whether one emphasizes the ready mobility of automobiles or the pervasive regulation that diminishes the owner's privacy interests in such property. No one seriously suggests that the State's regulatory regime for road safety makes acceptable such unchecked and potentially permanent seizures of automobiles under the State's criminal laws. And, as the Florida Supreme Court cogently explained, an exigent circumstance rationale is not available when the seizure is based upon a belief that the automobile may have been used at some time in the past to assist in illegal activity and the owner is already in custody.[4] Moreover, the state court's conclusion that the warrant process is a sensible protection from abuse of government power is bolstered by the inherent risks of hindsight at postseizure hearings and law enforcement agencies' pecuniary interest in the seizure of such property. See Fla. Stat. § 932.704(1) (1997); cf. *United States* v. *James Daniel Good Real Property*, 510 U. S. 43, 55–56 (1993).

---

[4] 710 So. 2d 949, 953–954 (Fla. 1998) ("There simply was no concern presented here that an opportunity to seize evidence would be missed because of the mobility of the vehicle. Indeed, the entire focus of the seizure here was to seize the vehicle itself as a prize because of its alleged prior use in illegal activities, rather than to search the vehicle for contraband known to be therein, and that might be lost if not seized immediately"). The majority notes, *ante*, at 565, n. 4, but does not confront, the argument that the mobility of White's vehicle was not a substantial governmental concern in light of the delay between establishing probable cause and seizure.

Were we confronted with property that Florida deemed unlawful for private citizens to possess regardless of purpose, and had the State relied on the plain-view doctrine, perhaps a warrantless seizure would have been defensible. See *Horton* v. *California,* 496 U. S. 128 (1990); *Arizona* v. *Hicks,* 480 U. S. 321, 327 (1987) (citing *Payton* v. *New York,* 445 U. S. 573 (1980)). But " '[t]here is nothing even remotely criminal in possessing an automobile,' " *Austin* v. *United States,* 509 U. S. 602, 621 (1993) (quoting *One 1958 Plymouth Sedan* v. *Pennsylvania,* 380 U. S. 693, 699 (1965)); no serious fear for officer safety or loss of evidence can be asserted in this case considering the delay and circumstances of the seizure; and only the automobile exception is at issue, 710 So. 2d, at 952; Brief for Petitioner 6, 28.[5]

In any event, it seems to me that the State's treatment of certain vehicles as "contraband" based on past use provides an added reason for insisting on an appraisal of the evidence by a neutral magistrate, rather than a justification for expanding the discretionary authority of the police. Unlike a search that is contemporaneous with an officer's probable-cause determination, *Horton,* 496 U. S., at 130–131, a belated seizure may involve a serious intrusion on the rights of innocent persons with no connection to the earlier offense. Cf. *Bennis* v. *Michigan,* 516 U. S. 442 (1996). And a seizure supported only by the officer's conclusion that at some time in the past there was probable cause to believe that the car was then being used illegally is especially intrusive when followed by a routine and predictable inventory search—

---

[5] There is some force to the majority's reliance on *United States* v. *Watson,* 423 U. S. 411 (1976), which held that no warrant is required for felony arrests made in public. *Ante,* at 565–566. With respect to the seizures at issue in *Watson,* however, I consider the law enforcement and public safety interests far more substantial, and the historical and legal traditions more specific and engrained, than those present on the facts of this case. See 423 U. S., at 415–424; *id.,* at 429 (Powell, J., concurring) ("[L]ogic sometimes must defer to history and experience").

even though there may be no basis for believing the car then contains any contraband or other evidence of wrongdoing.[6]

Of course, requiring police officers to obtain warrants in cases such as the one before us will not allay every concern private property owners might have regarding government discretion and potentially permanent seizures of private property under the authority of a State's criminal laws. Had the officers in this case obtained a warrant in July or August, perhaps they nevertheless could or would have executed that warrant months later; and, as the Court suggests, *ante*, at 565, n. 4, delay between the basis for a seizure and its effectuation might support a Fourth Amendment objection whether or not a warrant was obtained. That said, a warrant application interjects the judgment of a neutral decisionmaker, one with no pecuniary interest in the matter, see *Connally* v. *Georgia*, 429 U. S. 245, 250–251 (1977) *(per curiam)*, before the burden of obtaining possession of the property shifts to the individual. Knowing that a neutral party

---

[6] The Court's reliance on *G. M. Leasing Corp.* v. *United States*, 429 U. S. 338 (1977), is misplaced. The seizure in that case was supported by an earlier tax assessment that was "given the force of a judgment." *Id.*, at 352, n. 18 (internal quotation marks omitted). We emphasized that the owner of the automobiles in question lacked a privacy interest, but he had also lost any possessory interest in the property by way of the prior judgment. In this case, despite plenty of time to obtain a warrant that would provide similar preseizure authority for the police, they acted entirely on their own assessment of the probative force of evidence relating to earlier events. In addition, White's property interests in his car were apparently not extinguished until, at the earliest, the seizure took place. See Fla. Stat. §§ 932.703(1)(c)–(d) (1997) (the State acquires rights, interest, and title in contraband articles at the time of seizure, and the seizing agency may not use the seized property until such rights, interest, and title are "perfected" in accordance with the statute); § 932.704(8); *Soldal* v. *Cook County*, 506 U. S. 56, 63–64 (1992). This statutory scheme and its aims, see Fla. Stat. § 932.704(1) (1997), also distinguish more mundane and temporary vehicle seizures performed for regulatory purposes and immediate public needs, such as a tow from a no-parking zone. No one contends that a warrant is necessary in that case.

will be involved before private property is seized can only help ensure that law enforcement officers will initiate forfeiture proceedings only when they are truly justified. A warrant requirement might not prevent delay and the attendant opportunity for official mischief through discretionary timing, but it surely makes delay more tolerable.

Without a legitimate exception, the presumption should prevail. Indeed, the particularly troubling aspect of this case is not that the State provides a weak excuse for failing to obtain a warrant either before or after White's arrest, but that it offers us no reason at all. The justification cannot be that the authorities feared their narcotics investigation would be exposed and hindered if a warrant had been obtained. *Ex parte* warrant applications provide neutral review of police determinations of probable cause, but such procedures are by no means public. And the officers had months to take advantage of them. On this record, one must assume that the officers who seized White's car simply preferred to avoid the hassle of seeking approval from a judicial officer. I would not permit bare convenience to overcome our established preference for the warrant process as a check against arbitrary intrusions by law enforcement agencies "engaged in the often competitive"—and, here, potentially lucrative—"enterprise of ferreting out crime." *Johnson* v. *United States*, 333 U. S. 10, 14–15 (1948).

Because I agree with the Florida Supreme Court's judgment that this seizure was not reasonable without a warrant, I respectfully dissent.