

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-6-2009

# Larry Bumgarner v. Mary Benianati

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1724

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Larry Bumgarner v. Mary Benianati" (2009). *2009 Decisions.* Paper 1767.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1767

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-1724
_____

LARRY BUMGARNER

v.

JANE ANN HART, individually; JAH MEETING PLANNERS, INC.,
a New Jersey corporation, also known as JAH MEETING PLANNERS
INTERNATIONAL, also known as JANE ANN HART MEETING
PLANNERS; DANDY.NET, an alleged Corporation of unknown
citizenship with offices in and doing business in New Jersey, also known
as DANDY CONNECTIONS, INC.; BIACORE CORPORATION, a
Swedish Corporation with offices in and doing business in New Jersey,
also known as BIACORE INTERNATIONAL AKTIEBOLAG; CITY
OF BRIGNTINE BEACH, a public entity; UNKNOWN NAMED
ATLANTIC CITY POLICEMEN; UNKNOWN NAMED CITY OF
BRIGANTINE BEACH POLICEMEN
(Camden New Jersey District No. 05-cv-03900)


LARRY BUMGARNER

v.

CITY OF ATLANTIC CITY, a public entity; MARY ANN BENIANATI,
an attorney; RONA ZUCKER KAPLAN, an attorney; ALAN I. KALB,
an attorney; COOPER LEVENSON, a legal firm; JANE ANN HART,
an individual; UNKNOWN NAMED ATLANTIC CITY POLICEMEN;
UNKNOWN NAMED CITY OF BRIGANTINE BEACH POLICEMEN,
and 0 unknown other named defendants; JOHN MILLER, Atlantic City
Policeman, Individually and as Employees of the Atlantic City Police
Department; MARK PIZZUTILLO, Atlantic City Policeman, Individually
and as Employees of the Atlantic City Police Department
(Camden New Jersey District No. 06-cv-00142)

John Miller and Mark Pizzutillo,
Appellants

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Nos. 05-cv-3900 and 06-cv-142)
District Judge: Honorable Renee M. Bumb

_____

Submitted Under Third Circuit LAR 34.1(a)
February 2, 2009

Before:   RENDELL, JORDAN and ROTH, *Circuit Judges*.

(Filed: March 06, 2009)

_____

OPINION OF THE COURT

_____

JORDAN, *Circuit Judge*.

Officers John Miller and Mark Pizzutillo of the Atlantic City Police Department

(the "Officer Defendants") appeal the order of the United States District Court for the

District of New Jersey denying their summary judgment motion.  They had moved for

summary judgment on the basis of qualified immunity, but the District Court held that

they were not entitled to that protection because, when they seized a vehicle from *pro se*

appellee Larry Bumgarner, they did so without a warrant and in violation of clearly

established law.  We conclude, however, that a reasonable officer under the

circumstances could have believed that the seizure was consistent with the Fourth

Amendment, and we will therefore reverse the judgment of the District Court.

2

## I. Background

The underlying action, brought pursuant to 28 U.S.C. § 1983, *Bumgarner v. City of Atlantic City, et. al.*, No. 06-00124, has been consolidated with a copyright case also filed by Bumgarner against Jane Ann Hart, *Bumgarner v. Hart*, No. 05-3900 (the "Copyright Case"), in which neither Miller nor Pizzutillo are named defendants. Due to the consolidation, this appeal has a lengthy and complex factual background. Because we write primarily for the benefit of the parties, we will summarize only those facts relevant to this appeal.

Bumgarner was an employee of JAH, a meeting planning business of which Jane Ann Hart was the President and sole shareholder. In September 2003, Hart gave Bumgarner the use of a 2003 Nissan Pathfinder that was leased to JAH. When he stopped working for the company in July 2005, Bumgarner retained possession of the Pathfinder despite demands from Hart that he return it.[1] On August 5, 2005, Bumgarner filed his complaint in the Copyright Case, alleging violations of the Copyright Act of 1976, 17 U.S.C. § 101, et. seq., and the Digital Millennium Copyright Act, 17 U.S.C. § 512. The complaint in the Copyright Case mentions the Pathfinder but does not contain any claims relating to it.

---

[1] Bumgarner and Hart also had a personal relationship, which evidently ended sometime at or near the time he left JAH's employ.

On September 13, 2005, Hart again demanded that Bumgarner return the Pathfinder or, alternatively, assume the registration, insurance, and lease payments. She also advised him that if he failed to respond, she would file a criminal complaint reporting the vehicle stolen. Bumgarner failed to return the vehicle. On September 19, Hart filed a counterclaim in the Copyright Case, seeking possession of the Pathfinder, and a criminal complaint with the City of Brigantine, New Jersey, alleging that Bumgarner committed "theft by purposely obtaining or retaining" the Pathfinder. Hart also filed a statement with the Brigantine police in support of her criminal complaint, alleging that Bumgarner retained the vehicle and had told her he had no plan to return it. A letter from the Brigantine Municipal Court advising Hart that a probable cause hearing was scheduled for October 6 was sent to her on September 21. Bumgarner is listed on the letter as a copy addressee.

The probable cause hearing before the Brigantine Municipal Court took place as scheduled on October 6, 2005. Bumgarner did not appear at the hearing but conceded at a later deposition that he had been aware of it. The hearing resulted in a summons being issued against Bumgarner for "operations of a motor vehicle without permission of owner" in violation of N.J. Stat. Ann. 39:4-48. (App. at 201.) This was a downgraded charge from the theft complaint filed by Hart. The summons contains a "probable cause determination for issuance of process" and the signature of the judicial officer in charge

4

of the probable cause hearing. (*Id*.) The summons was addressed to Bumgarner and also contains the date, November 17, 2005, on which his appearance in court was required.

The next day, October 7, Hart saw the Pathfinder parked in the lot of Harrah's Casino in Atlantic City. She contacted the Atlantic City Police Department, and Officers Miller and Pizzutillo responded. Hart showed the Officers the summons as well as the vehicle registration papers and proof of insurance, which were both in her name. Casino security found Bumgarner, who was then working at Harrah's, and brought him to the parking lot. Bumgarner claims that Officer Miller rejected his attempts to demonstrate that he was lawfully in possession of the Pathfinder and that he crumpled a piece of evidence and threw it on the ground. He also claims that Miller threatened to arrest him if he did not turn over the keys. It is undisputed that Bumgarner eventually gave the keys to the Pathfinder to Miller who returned them to Hart. Hart then returned the vehicle to the dealer.

On January 11, 2006, Bumgarner filed a *pro se* complaint in which he alleged violations of the Fourth Amendment and 28 U.S.C. § 1983 and named as defendants the City of Atlantic City, The City of Brigantine, the Officer Defendants, Hart, JAH, and Hart's Counsel, Cooper Levenson April Niedelman & Wagenheim, P.A., and associated individual attorneys, April Niedelman & Wagenheim, P.A., Mary Ann Beninati, Rona Zucker Kaplan, and Alan Kalb (the "Cooper Defendants"). The case was initially assigned to United Stated District Judge Freda Wolfson, before whom the Copyright Case

was also pending. Judge Wolfson had issued several rulings in the Copyright Case, including a June 21, 2006 Order in which she stated, *inter alia*, that "[t]he Atlantic City Police Assisted Hart's lawful repossession of the vehicle." (App. 280.) Both the Copyright Case and the § 1983 action were reassigned to Judge Renee Bumb on July 5, 2006.

On February 2, 2007, Judge Bumb heard argument and orally granted summary judgment against Bumgarner on all of his claims against all defendants. Bumgarner filed a Rule 60(b) motion and, on June 7, 2007, Judge Bumb vacated the February 2nd Order. In the June 7th Order, Judge Bumb stated that she had mistakenly concluded that a finding by Judge Wolfson in the Copyright Case estopped Bumgarner from asserting his claims in the instant action. Because the "Court overlooked the fact that the Order was not a final adjudication on the merits of the claims Plaintiff asserted" in his complaint, Judge Bumb held that dismissal was not warranted. *Bumgarner v. Hart*, 2007 WL 1672401, at *5 (D. N.J., Jun. 7, 2007).[2]

---

[2] The June 7th Order did dismiss claims against the City of Brigantine on the basis that plaintiff had failed to allege that the Officer Defendants had acted pursuant to a policy or custom, as required under *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 690-695 (1978). The Court also deemed as filed an amended complaint that Bumgarner had previously attempted to file in the § 1983 action. *See Bumgarner*, 2007 WL 1672407 at *10. The amended complaint personally identified the Officer Defendants. The June 7th Order further directed that the § 1983 action, which had been docketed as 06-142, remain closed and that all proceedings now be consolidated under the Copyright Case docket, No. 05-3900. The amended complaint was therefore filed as part of the latter case.

The Officer Defendants subsequently moved for summary judgment, asserting, among other things, that they were entitled to qualified immunity. In an Order and Opinion dated February 29, 2008, the District Court denied their motion,[3] stating that "even though Plaintiff's possessory interest in the Pathfinder was disputed, such interest deserved constitutional protection. Because Defendants seized the Pathfinder without a warrant, such seizure was unreasonable and in violation of Plaintiff's Fourth Amendment rights." *Bumgarner v. Hart*, 2008 WL 576998, at *3 (D. N.J. Feb. 29, 2008) The Court also denied the Officer Defendants' claim to qualified immunity on the basis that "[a] reasonable officer would have asked to see a warrant before seizing the Pathfinder. Because ... the Officer Defendants did not act reasonably in seizing the Pathfinder without a warrant, they are not entitled to qualified immunity." *Id.* at *4. Miller and Pizzutillo timely appealed.

---

[3]The denial was in conjunction with the denial of summary judgment motions filed by other defendants.

7

## II.    Discussion[4]

Qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful."  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  While qualified immunity protects officers during the course of their duties, that protection is forfeited when an officer's conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Wilson v. Layne*, 526 U.S. 603, 614 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Whether a right was clearly established at the time of the alleged violation is an objective inquiry which we decide as a matter of law.  *See Bartholomew v. Pennsylvania*, 221 F.3d 425, 428 (3d Cir. 2000).

There is no rigid procedure that courts must follow in determining whether qualified immunity is warranted.  *See Pearson v. Callahan*, 555 U.S. –, –S.Ct.–, 2009 WL 128768, at *9 (Jan. 21, 2009) (noting that while the two-step inquiry set forth in *Saucier v. Katz*, 533 U.S. 194 (2001), "is often appropriate, it should no longer be regarded as mandatory").  Rather, courts may follow the two-step analysis set forth in *Saucier v. Katz*,

---

[4]The District Court had jurisdiction pursuant to 28 U.S.C.§ 1331.  Orders denying qualified immunity fall within the collateral order doctrine.  *See Scott v. Harris*, 127 S.Ct. 1769, 1773 n.2 (2007) (citation omitted) ("[W]e have held that an order denying qualified immunity is immediately appealable even though it is interlocutory; otherwise, it would be effectively unreviewable."); *Miller v. Clinton County*, 544 F.3d 543, 547 (3d Cir. 2008) ("A denial of qualified immunity is a "final judgment" subject to immediate appeal within the meaning of 28 U.S.C. § 1291.").  We exercise plenary review over orders denying summary judgment on qualified immunity grounds.  *Doe v. Groody*, 361 F.3d 232, 237 (3d Cir. 2004).  In so doing, we view the facts in the light most favorable to the nonmoving party.  *Kopec v. Tate*, 361 F.3d 772, 775 (3d Cir. 2004).

looking first to whether "a constitutional right would have been violated on the facts alleged ..." and, if so, then to whether the right was "clearly established." 533 U.S. at 200-01. Alternatively, a court may look directly to whether the law prohibiting a defendant's conduct was clearly established, without determining whether there was a constitutional violation under the circumstances presented. *Pearson*, 2009 WL 128768, at *13 ("Our decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether the procedure is worthwhile in particular cases.").

We choose to approach the qualified immunity issue here by asking whether the law was so clearly established that the Officer Defendants' conduct would have appeared unlawful to an objectively reasonable officer.[5] *Walter v. Pike County*, 544 F.3d 182, 191 (3d Cir. 2008). That inquiry considers not just whether the officer's actions were reasonable in light of clearly established law but also the information possessed by the officer. *See Anderson v. Creighton*, 483 U.S. 635, 641(1987) (We consider whether "a reasonable officer could have believed [his conduct] was lawful, in light of clearly established law and the information the [officer] possessed."). We conclude that, under

---

[5] We note that, as to Officer Pizzutillo, there is a significant question as to whether Bumgarner has satisfied the state action element of a § 1983 claim. *See Abbott v. Latshaw*, 164 F.2d 141 (3d Cir. 1988) ("[M]ere presence of police at the scene of a private repossession does not, alone, constitute state action."). It is uncontested that he was a mere spectator during the repossession. As Bumgarner confirmed at his deposition, Officer Pizzutillo just "stood moot [sic]. He stood there and he didn't say a word and he let it go down." (App. at 111). Because we determine that Officer Pizzutillo is entitled to qualified immunity, we need not determine whether he was a state actor.

the circumstances, it would not have been apparent to an objectively reasonable officer that seizing the vehicle was unlawful.

At the time of the seizure, the Officer Defendants were presented both with documents indicating that Hart owned the Pathfinder and with a court-issued summons setting forth on its face a finding by a judicial officer that there was probable cause to believe that Bumgarner was in "operation of a motor vehicle without permission of [the] owner." (App. at 201.) A reasonable officer, standing in a parking lot, presented with evidence of ownership of a vehicle and a court's finding of probable cause to conclude that the person possessing the vehicle was doing so in derogation of the owner's rights, reasonably could have understood that taking the vehicle from the party in possession and returning it to the owner was not a violation of the Fourth Amendment. Indeed, Judge Wolfson, a United States District Judge, had concluded as much in the Copyright case. She found that "[t]he Atlantic City police assisted Hart's lawful repossession of the vehicle." (App. at 280.) She too relied on the summons and the probable cause finding, stating that Hart "seized the 2003 Pathfinder pursuant to a lawful determination by the Brigantine Municipal Court that probable cause existed to believe Plaintiff was operating it unlawfully." (App. at 282.) Those statements by Judge Wolfson may not have been binding on Judge Bumb; however, when reasonable jurists arrive at differing conclusions

as to the lawfulness of an officer's conduct, it is difficult to say that the conduct in question violated clearly established law.[6]

New Jersey Statutory law is a further a source from which the Officer Defendants could have reasonably concluded that their conduct was lawful. New Jersey courts have observed that the "seizure of a motor vehicle ... when [the motor vehicle commission] has reason to believe that the motor vehicle has been stolen or is otherwise being operated under suspicious circumstances" is permissible under Title 39:4-47, N.J. Stat. Ann. *See State v. Jones*, 301 A.2d 185 (N.J. Dist. Ct. 1973). While the statute references a seizure by the motor vehicle commission, it has been applied to warrantless seizures by police officers. *See State v. Dickey*, 706 A.2d 180, 188-89 (N.J. 1998) (applying § 39:5-47 to a traffic stop by a police officer); New Jersey Practice Series, 32 NJPR § 16.81 (stating that "Several New Jersey statutes authorize the police to seize motor vehicles operated over the highways of this State" and citing Title 39:5-47).[7] The Officer Defendants here had

_____

[6]It is also possible that the Officer Defendants may have thought that their conduct was constitutionally justified on the basis that, when police believe that a vehicle itself is contraband, a warrantless seizure of the vehicle is permitted and does not contravene the Fourth Amendment. *See Florida v. White*, 526 U.S. 559, 565 (1999) (upholding warrantless seizure of vehicle from public parking lot where "the *automobile*, as opposed to its contents, is the contraband that the police seek to secure"). The Officer Defendants were presented with evidence, in the form of the vehicle registration papers and insurance, that Bumgarner was not the owner of the vehicle and, more importantly, they were presented with evidence of a complaint, contained in the summons, that he was not properly in possession of the vehicle. From this they could have reasonably concluded that the vehicle itself was contraband.

[7]In addition, the failure of a vehicle operator to produce a valid driver's license, registration, proof of insurance, or proof of ownership may be sufficient to support

11

reason to believe that the Pathfinder was "being operated under suspicious circumstances." Not only had Hart shown the officers a valid registration and proof of insurance, both of which were in her name and reflected ownership of the vehicle, but she presented a summons containing a probable cause finding that the vehicle was being operated without her permission and in violation of New Jersey law.

As we have long recognized, "qualified immunity ... 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" *Blackhawk v. Pennsylvania*, 381 F.3d 202, 215 (3d Cir. 2004) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Because a reasonable officer could have concluded that, under the circumstances, seizing the Pathfinder was not a violation of the Fourth Amendment, the District Court improperly denied the Officer Defendants' summary judgment motion. Having decided that the Officer Defendants did not act in violation of clearly established law, we need not determine whether there was a constitutional violation under the particular facts presented. The Officer Defendants are entitled to a grant of summary judgment on the basis of qualified immunity.

---

seizure of the vehicle, at least as a matter of New Jersey law. *See* N.J. Stat. Ann. 39:4-47; *State v. Cooper*, 2006 WL 1229342, at *5 (N.J. Super. App. Div., May 9, 2006).

**III. Conclusion**

For the foregoing reasons, we will reverse the order of the District Court to the extent that it denied Pizzutillo and Miller summary judgment and will order entry of summary judgment in their favor.