[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-10196
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 16, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00348-CR-CC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE DEL CARMEN VASQUEZ-ORTIZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(September 16, 2009)

Before BLACK, BARKETT and WILSON, Circuit Judges.

PER CURIAM:

Jose Del Carmen Vasquez-Ortiz appeals his conviction and 46-month

sentence imposed for re-entry into the United States by an alien previously removed subsequent to a conviction for commission of an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). Vasquez-Ortiz filed a motion to suppress evidence, which the district court granted as to his post-arrest custodial statements and denied as to the rest of the evidence. Vasquez-Ortiz subsequently pled guilty pursuant to a written plea agreement, wherein he waived his right to appeal his conviction and sentence, except that he reserved the right to appeal: (1) a sentence higher than 57 months' imprisonment and (2) the district court's order resolving his motion to suppress.

On appeal, he argues that his detention and arrest were not supported by reasonable suspicion and probable cause, respectively, such that the district court erred when it denied his motion to suppress. Accordingly, he asserts that his other statements, fingerprints, photographs, alien file, and any other evidence should be suppressed. Furthermore, he argues that his sentence was unreasonable, but concedes in his reply brief that in his plea agreement he waived his right to appeal his sentence.

## I. Motion to suppress

We review a district court's denial of a defendant's motion to suppress under a mixed standard of review, reviewing the district court's findings of fact for clear

error and the district court's application of law to those facts *de novo*. *United States v. Ramirez*, 476 F.3d 1231, 1235 (11th Cir. 2007). The court's factual findings are construed in the light most favorable to the prevailing party. *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006). Additionally, we give the district court's credibility determinations great deference. *United States v. Clay*, 376 F.3d 1296, 1302 (11th Cir. 2004) (internal quotation marks and citation omitted).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. amend. IV. Generally, any evidence obtained by unconstitutional searches and seizures is inadmissible in court. *See Mapp v. Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691 (1961). In addition to the illegally obtained evidence, the defendant may suppress incriminating evidence that was derived from that primary evidence, i.e., "fruit of the poisonous tree." *United States v. Terzado-Madruga*, 897 F.2d 1099, 1112 (11th Cir. 1990) (citation omitted).

There are three categories of police-citizen encounters contemplated within the Fourth Amendment: "[(1)] police-citizen communications involving no coercion or detention; [(2)] brief seizures or investigatory detentions; and [(3)]

full-scale arrests." *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989) (citations omitted). The first category does not implicate Fourth Amendment scrutiny. *Id.*

As to the second category, law enforcement officers may briefly detain a person for an investigatory stop if they have a reasonable, articulable suspicion based on objective facts that the person has engaged, or is about to engage, in criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884-85 (1968). Reasonable suspicion requires "more than a hunch"; it requires that the totality of the circumstances create, at least, "some minimal level of objective justification" for the belief that the person engaged in unlawful conduct. *United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1220-21 (11th Cir. 1993) (citation omitted).

"[A] person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S. Ct. 1870, 1877 (1980). The Supreme Court has indicated that the proper inquiry is whether, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *Id.* at 554, 100 S. Ct. at 1877.

As to the third category, "when the totality of circumstances indicate that an

4

encounter has become too intrusive to be classified as a brief seizure, the encounter is an arrest and probable cause is required." *United States v. Espinosa-Guerra*, 805 F.2d 1502, 1506 (11th Cir. 1986) (citation omitted). "Whether or not an arrest has occurred depends on the particular facts involved in an incident. No formal words are required stating that an individual is under arrest and it is not necessary that a formal arrest record be filed." *United States v. Ashcroft*, 607 F.2d 1167, 1170 (5th Cir. 1979) (citation omitted)[1]. We have recognized a non-exclusive list of factors that may indicate an arrest: "the blocking of an individual's path or the impeding of his progress; the display of weapons; the number of officers present and their demeanor; the length of the detention; and the extent to which the officers physically restrained the individual." *Hastamorir*, 881 F.2d at 1556. Of course, "[o]nce a *Terry* stop exceeds its carefully circumscribed limits, the police must observe the probable cause requirement." *United States v. Mosquera-Ramirez*, 729 F.2d 1352, 1356 (11th Cir. 1984) (citation omitted).

Probable cause exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect

---

[1]In *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the newly-formed Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

has committed, is committing, or is about to commit an offense." *United States v. Lyons*, 403 F.3d 1248, 1253 (11th Cir. 2005) (internal quotation marks and citation omitted). "For probable cause to exist, an arrest must be objectively reasonable based on the totality of the circumstances." *United States v. Street*, 472 F.3d 1298, 1305 (11th Cir. 2006) (citation and ellipsis omitted). As such, the officer's own subjective opinions or beliefs about probable cause are irrelevant. *Id.*

The Supreme Court's "Fourth Amendment jurisprudence has consistently accorded law enforcement officials greater latitude in exercising their duties in public places." *Florida v. White*, 526 U.S. 559, 565, 119 S. Ct. 1555, 1559 (1999). "For example, although a warrant presumptively is required for a felony arrest in a suspect's home, the Fourth Amendment permits warrantless arrests in public places where an officer has probable cause to believe that a felony has occurred." *Id.*

Under 8 U.S.C. § 1357, immigration officers are authorized, without a warrant, "to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States. . . ." 8 U.S.C. § 1357(a)(1). This authority, however, is subject to the principles of the Fourth Amendment. *United States v. Rodriguez-Franco*, 749 F.2d 1555, 1559 (11th Cir. 1985).

"Every alien . . . shall at all times carry with him and have in his personal possession any certificate of alien registration or alien registration receipt card

6

issued to him. . . ." 8 U.S.C. § 1304(e). A violation of this section is a misdemeanor. *Id.*

While Vasquez-Ortiz was sitting at the top of a staircase in a public location, two law enforcement officers ascended the staircase and approached him. The law enforcement officers, who were patrolling a public location known to be a hangout for gangs with illegal alien membership, noted that Vasquez-Ortiz was dressed in attire that indicated gang membership and appeared to have a tattoo that indicated gang membership. As such, the officers has reasonable suspicion to conduct an investigatory stop of Vasquez-Ortiz.

The officers neither drew their weapons, raised their voices, touched Vasquez-Ortiz, nor directed him to do anything. Rather, consistent with an investigatory stop, the officers asked Vasquez-Ortiz a series of questions. The officers inquired into where Vasquez-Ortiz was from and whether he had identification. Vasquez-Ortiz responded that he was from El Salvador and did not have identification. Because the officers had a reasonable suspicion that Vasquez-Ortiz was an alien based on his answers to their questions, they were then authorized, without a warrant, to interrogate him about his right to be or remain in the United States. 8 U.S.C. § 1357(a)(1). The officers then arrested Vasquez-Ortiz, directing him down the staircase toward additional officers.

7

Because the district court has already suppressed all evidence subsequent to Vasquez-Ortiz's arrest, with the exception of Vasquez-Ortiz's spontaneous statements, the only evidence at issue here is the evidence garnered from the investigatory stop. The district court did not clearly err when it found that the arresting officer credibly testified that he asked Vasquez-Ortiz where he was from and whether he had identification during the first moments of their encounter. Additionally, the district court properly found that Vasquez-Ortiz's response–that he was from El Salvador and did not have any identification– coupled with the other surrounding circumstances, established reasonable suspicion and probable cause to believe that he was violating 8 U.S.C. § 1304(e). Thus, the district court did not err when it denied Vasquez-Ortiz's motion to suppress. We affirm as to this issue.

## II. Sentence-appeal waiver

We review the knowing and voluntary nature of a sentence-appeal waiver *de novo*. *United States v. Bushert*, 997 F.2d 1343, 1352 (11th Cir. 1993). A sentence-appeal waiver contained in a plea agreement, made knowingly and voluntarily, is enforceable. *Id.* at 1350. To enforce the sentence-appeal waiver, the government must demonstrate either that (1) the district court specifically questioned the defendant about the waiver during the change-of-plea colloquy, or (2) the record

8

clearly shows that the defendant otherwise understood the full significance of the waiver. *Id.* at 1351.

Because Vasquez-Ortiz indicated that he signed and understood his plea agreement, and the district court reviewed the sentence-appeal waiver with him at his plea hearing, Vasquez-Ortiz entered into a valid, enforceable waiver. Since his sentencing claims on appeal do not fall within the limited exception to the waiver, as he concedes, we dismiss with prejudice as to this issue.

### III. Conclusion

We affirm the district court's denial of Vasquez-Ortiz's motion to suppress, and we dismiss with prejudice his challenge to his sentence.

**AFFIRM in part; DISMISS WITH PREJUDICE in part.**