[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-13226
Non-Argument Calendar
_____

D.C. Docket No. 2:14-cr-00636-LSC-WC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHAD LAMAR HOGAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(April 10, 2017)

Before MARTIN, FAY and ANDERSON, Circuit Judges.

PER CURIAM:

Chad Lamar Hogan appeals his conviction and sentence for possession of a firearm by a convicted felon.  We affirm.

## I. BACKGROUND

In June 2013, Detective Greg Schnupp, a detective with the Montgomery Police Department ("MPD"), was investigating a group of armed-home-invasion robberies.  Following one of the robberies, MPD canvassed the victim's neighborhood and a neighbor reported having seen a white Ford Expedition near the scene prior to the crime.  The neighbor had written down the license-plate number of the vehicle and provided it to MPD, which later discovered the vehicle was registered to Hogan.  Detective Schnupp created a be-on-the-lookout notification ("BOLO") for Hogan to be taken to the police department for questioning.  He included descriptions of the two cars registered to Hogan.  The BOLO stated Hogan should be considered armed and dangerous, because the victims of the robberies had reported the offenders were armed and because of Hogan's criminal history.  Although Detective Schnupp believed he had probable cause to question Hogan and to obtain an arrest warrant, he did not obtain a warrant, because he "was trying to build [a] case against Hogan."  Hr'g Tr. at 24 (Mar. 19, 2015).

At morning roll call on June 16, 2013, MPD supervisors issued the BOLO to the patrol units.  Corporal Steven Pearson received the BOLO and, while out on

2

patrol that morning, went by Hogan's address, saw a white Ford Expedition in the driveway, and waited for the car to leave. Around noon, an individual left the home and drove away in the Expedition. Corporal Pearson verified the driver was male, and the car matched one of those described in the BOLO; he then stopped the car. Corporal Pearson intended to identify the driver as Hogan and transport him to the police station. Based on the BOLO, Corporal Pearson believed law enforcement had probable cause to arrest Hogan.

As he approached the car, Corporal Pearson instructed the driver to place his hands on the steering wheel and escorted the driver out of the car. The driver identified himself as Hogan. Corporal Pearson asked whether Hogan had any weapons, needles, or items on him that could stick or hurt him during a pat-down. Hogan responded there was a gun in the car, but he did not have anything on his person. Corporal Pearson then patted Hogan down for safety, handcuffed him, advised him he was being detained for questioning, and had him sit on the street curb. At the time, Corporal Pearson was not aware Hogan was a convicted felon.

While waiting for backup, Corporal Pearson contacted Detective Schnupp. When Detective Schnupp learned there was a firearm in Hogan's vehicle, he told Corporal Pearson "to make sure that [Hogan] was handcuffed and that if he did not have the permit for it, that he was currently under arrest for being in possession of a firearm." Hr'g Tr. at 25. Backup units arrived within a "couple minutes";

3

Corporal Pearson placed Hogan in his police vehicle and transported him to the criminal investigations division.  Hr'g Tr. at 8.

A grand jury indicted Hogan on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(l).  The indictment charged he knowingly possessed a Taurus .38 revolver on June 16, 2013.  Hogan filed a motion to suppress the items seized from his car and the statements he had made; he argued law enforcement obtained the evidence as a result of his unlawful seizure.  After a hearing, the magistrate judge issued a recommendation Hogan's suppression motion be denied.  The magistrate judge determined the collective knowledge of Corporal Pearson and Detective Schnupp, viewed objectively, did not establish probable cause to arrest Hogan when he initially was stopped.  The magistrate judge reasoned the BOLO alone did not establish probable cause and Detective Schnupp's suspicion of Hogan only was based on a neighbor's observation of Hogan's car at some point prior to one of the robberies.  The magistrate judge determined, however, Hogan was not under arrest when he was initially stopped; he was subject to a reasonable investigatory-traffic stop.  The magistrate judge explained an objectively reasonable officer reading the BOLO would have had reasonable suspicion Hogan was involved in criminal activity. The investigatory stop did not become an arrest when Hogan was handcuffed, asked about weapons, and patted down, because Corporal Pearson could take such

4

measures to ensure his safety based on his reasonable belief Hogan was armed and dangerous. The magistrate judge stated the delay of the stop for a few minutes to allow backup to arrive did not transform the stop into an arrest; probable cause existed to arrest Hogan for being a felon in possession of a firearm once Corporal Pearson informed Detective Schnupp Hogan had a gun in the car, given Detective Schnupp's knowing Hogan had a felony record. This knowledge also gave law enforcement probable cause to search the car for the gun. The magistrate judge determined Hogan was not in custody when he made the admission of the gun in the car; therefore, he was not yet entitled to *Miranda* warnings.[1]

Hogan moved to reopen the suppression hearing and argued he was not given an opportunity to present evidence at the hearing. The district judge granted the motion. During the supplemental suppression hearing, Hogan testified regarding his version of the arrest. The magistrate judge then issued a supplemental report and again recommended Hogan's motion to suppress be denied. He stated Hogan had not presented any new legal arguments, and his testimony had no effect on the prior recommendation the motion to suppress be denied. Hogan filed objections to the recommendation. The district judge overruled Hogan's objections, adopted the magistrate judge's recommendation, and denied the motion to suppress. The district judge deferred to the magistrate

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

judge's credibility determinations and findings of fact.  The judge also noted the issue of precisely when Hogan was handcuffed was immaterial, because an investigatory stop does not become an arrest because the suspect is handcuffed. The judge determined Corporal Pearson's subjective reason for detaining Hogan was irrelevant to whether the stop and detention were objectively reasonable. Hogan entered a conditional plea to being a felon in possession of a firearm and reserved his right to appeal the denial of his motion to suppress.  The judge sentenced him to 36 months of imprisonment.

## II. DISCUSSION

On appeal, Hogan contends the district judge erred by denying his motion to suppress evidence law enforcement obtained during the stop of his car.  He argues he was unlawfully arrested during the stop without probable cause and subjected to custodial interrogation without being given *Miranda* warnings.

"The denial of a motion to suppress is reviewed under a mixed standard." *United States v. Ford*, 784 F.3d 1386, 1391 (11th Cir. 2015).  We review for clear error a district judge's findings of fact; we review de novo the application of law to those facts and construe the facts in the light most favorable to the prevailing party. *Id.*  Evidence obtained as a result of a violation of constitutional rights generally must be suppressed.  *See Wong Sun v. United States*, 371 U.S. 471, 484-85, 83 S. Ct. 407, 416 (1963).

6

The Fourth Amendment provides the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated" and "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Fourth Amendment permits a warrantless arrest in a public place if an officer has probable cause to believe that a felony has occurred. *Florida v. White*, 526 U.S. 559, 565, 119 S. Ct. 1555, 1559 (1999). Probable cause also permits a warrantless search of a car. *United States v. Ross*, 456 U.S. 798, 809, 102 S. Ct. 2157, 2164-65 (1982).

Law enforcement officers have probable cause to arrest when the facts and circumstances within their knowledge are sufficient to warrant a reasonable belief the suspect committed or is committing a crime. *United States v. Lopez-Garcia*, 565 F.3d 1306, 1314 (11th Cir. 2009). Probable cause to search exists when, "under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Thomas*, 818 F.3d 1230, 1243 (11th Cir.), *cert. denied*, 137 S. Ct. 171 (2016). Probable cause may be based on the collective knowledge of officers. *United States v. Allison*, 953 F.2d 1346, 1350 (11th Cir. 1992). The existence of probable cause is determined using an objective standard and without regard to the

7

subjective intent or beliefs of the officers. *United States v. Franklin*, 694 F.3d 1, 9 (11th Cir. 2012); *see also Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). Thus, a reviewing court must evaluate any alternative justifications for a seizure without regard to the rationale employed by an officer at the time of the arrest or detention. *See Devenpeck v. Alford*, 543 U.S. 146, 152-56, 125 S. Ct. 588, 593-95 (2004).

Law enforcement may conduct a brief, investigatory *Terry* stop even if probable cause is lacking. *United States v. White*, 593 F.3d 1199, 1202 (11th Cir. 2010) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968)). A *Terry* stop must be justified by "reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity." *Id.* (citation and internal quotation marks omitted); *accord Lopez-Garcia*, 565 F.3d at 1313 (stating reasonable suspicion requires "a particularized and objective basis for suspecting legal wrongdoing" and more than a hunch of criminal activity (citation and internal quotation marks omitted)). Reasonable suspicion is determined based on the totality of the circumstances and the collective knowledge of officers. *United States v. Nunez*, 455 F.3d 1223, 1226 (11th Cir. 2006). If a flyer or bulletin stating a person is wanted in an investigation is issued based on reasonable suspicion the person committed a crime, then reliance on that flyer or bulletin justifies a *Terry*

stop to check identification, pose questions, or detain the person briefly while attempting to obtain further information. *United States v. Hensley*, 469 U.S. 221, 232, 105 S. Ct. 675, 682 (1985).

In addition to being justified at its inception, a *Terry* stop must be reasonably related in scope to the circumstances that permitted the stop. *United States v. Griffin*, 696 F.3d 1354, 1358 (11th Cir. 2012). During a lawful traffic stop, officers may take steps reasonably necessary to protect their safety, including requiring the driver and any passengers to exit the car. *United States v. Spoerke*, 568 F.3d 1236, 1248 (11th Cir. 2009). An officer may conduct a pat-down for weapons if he reasonably believes his safety or the safety of others is threatened. *Griffin*, 696 F.3d at 1359. An officer also may handcuff a suspect if he possesses an articulable and objectively reasonable belief that a suspect is dangerous. *United States v. Acosta*, 363 F.3d 1141, 1146-47 (11th Cir. 2004).

A detention may exceed the permissible boundaries of a *Terry* stop and become a de facto arrest that must be supported by probable cause. *United States v. Dunn*, 345 F.3d 1285, 1289-90 (11th Cir. 2003). To determine whether a detention was a *Terry* stop or an arrest, we consider factors such as the law-enforcement purpose served by the detention, the diligence with which the officers pursued the investigation, the scope and intrusiveness of the investigation, and the duration of the detention. *United States v. Street*, 472 F.3d 1298, 1306 (11th Cir.

2006).  We ultimately focus "on whether the police diligently pursued a means of investigation likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the [suspect]."  *Id.* (citation and internal quotation marks omitted).

No person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  This privilege against self-incrimination requires that a suspect be advised of certain rights before being subject to custodial interrogation.  *Miranda v. Arizona*, 384 U.S. 436, 467, 86 S. Ct. 1602, 1624 (1966).  Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  *Id.* at 444, 86 S. Ct. at 1612; *see also California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 3520 (1983) (stating "the ultimate inquiry" in determining whether a suspect is in custody for the purpose of receiving *Miranda* protection is whether "there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest" (citation and internal quotation marks omitted)).  Whether a suspect is in custody is determined objectively, and the actual, subjective beliefs of the suspect and the interviewing officer are irrelevant.  *United States v. Lall*, 607 F.3d 1277, 1284 (11th Cir. 2010).  Individuals temporarily detained during ordinary traffic stops are not in custody for the purpose of applying *Miranda*, although a traffic stop

10

significantly curtails the freedom of action of the driver and any passengers. *Berkemer v. McCarty*, 468 U.S. 420, 436, 440, 104 S. Ct. 3138, 3148, 3150 (1984).

Corporal Pearson initiated a *Terry* stop of Hogan's car based on the BOLO issued on reasonable suspicion Hogan had been involved in robberies. Corporal Pearson had a reasonable concern for his safety during the stop, because the notification stated Hogan should be considered armed and dangerous. Therefore, Corporal Pearson acted reasonably in requiring Hogan to exit the car, handcuffing him, and conducting a pat-down for weapons. Corporal Pearson conducted a brief, reasonable traffic stop during which he diligently pursued the investigation into Hogan as a suspect for robbery.

Hogan was not in custody during the pat-down; therefore, he was not entitled to *Miranda* warnings when Corporal Pearson asked whether he had a weapon, and Hogan responded that there was a gun in his car. When Corporal Pearson informed Detective Schnupp Hogan had a gun, MPD had probable cause to search the car and to arrest Hogan for being a felon in possession of a firearm. MPD did not obtain evidence in violation of Hogan's constitutional rights. The district judge did not err by denying Hogan's motion to suppress evidence.

**AFFIRMED.**

11