[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Jordan*, Slip Opinion No. 2021-Ohio-3922.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-3922

THE STATE OF OHIO, APPELLEE *v.* JORDAN, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Jordan*, Slip Opinion No. 2021-Ohio-3922.]**

*Criminal law—Warrantless arrest—R.C. 2935.04—Neither a showing of exigent circumstances nor a showing of the impracticability of obtaining an arrest warrant is necessary to sustain the constitutionality of a warrantless arrest under either the United States Constitution or the Ohio Constitution—Court of appeals' judgment affirmed.*

(No. 2020-0495—Submitted March 31, 2021—Decided November 9, 2021.)

APPEAL from the Court of Appeals for Hamilton County,

Nos. C-1800559 and C-1800560, 2020-Ohio-689.

_____

**O'CONNOR, C.J.**

{¶ 1} Appellant, LeAndre Jordan, challenges the constitutionality of his warrantless arrest, which ultimately led to his convictions for multiple drug offenses.  He asks this court to hold that a police officer is constitutionally required

to secure an arrest warrant before conducting an arrest anytime the circumstances demonstrate that it is practicable to do so.

{¶ 2} R.C. 2935.04, Ohio's felony-arrest statute, authorizes a warrantless arrest "[w]hen a felony has been committed, or there is reasonable ground to believe that a felony has been committed" and there is "reasonable cause to believe" that the person being arrested is guilty of the offense. This court has held, consistently with United States Supreme Court precedent, "A warrantless arrest that is based upon probable cause and occurs in a public place does not violate the Fourth Amendment" to the United States Constitution. *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 66, citing *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Today, we reiterate that holding and further hold that neither a showing of exigent circumstances nor a showing of the impracticability of obtaining an arrest warrant is necessary to sustain the constitutionality of a warrantless arrest under either the United States Constitution or the Ohio Constitution.

**Facts and procedural background**

{¶ 3} This appeal stems from Jordan's convictions in the Hamilton County Court of Common Pleas for various drug offenses, but Jordan's drug charges arose as a result of his arrest for an unrelated crime with which he was ultimately not charged. The investigation of that unrelated offense is the focus of our analysis.

{¶ 4} On December 12, 2016, someone broke into James and Emiko Locke's Cincinnati home through a bedroom window and stole a safe that contained $40,000. Cincinnati Police Detective Mark Longworth, who investigated the burglary, characterized it as "unusual in that really only the safe was taken," as only a few people knew of the safe's location and contents. James Locke told Detective Longworth that other than Locke and his wife, only his son Michael and godson Demarco knew about the safe.

{¶ 5} The Lockes suspected that Michael had been involved in the burglary. They told Detective Longworth that they had thrown Michael out of the house but that he had "recently come back around." They were suspicious of Michael because he had telephoned them around the time of the burglary to determine whether they were home. Michael then arrived at his parents' home shortly after they discovered the burglary, "fishing around for information about what had happened" and what they knew. When a neighbor stopped by and reported that he had seen a suspicious vehicle—a cream-colored Chrysler 300—parked near the Lockes' house around the time of the burglary, Michael became upset and told the neighbor to leave.

{¶ 6} The Lockes believed that the vehicle the neighbor had described belonged to Michael's friend "Dre"—appellant, LeAndre Jordan—whom they described to Detective Longworth and characterized as "trouble." They told Detective Longworth that Jordan worked at a barbershop near the Kroger store on Warsaw Avenue. Detective Longworth located a cream-colored Chrysler parked in the Kroger parking lot, across the street from the barbershop; it was registered to Jordan's mother.

{¶ 7} Detective Longworth interviewed Michael a couple of days after the burglary, and Michael confirmed that Jordan drove the car that Detective Longworth had located in the Kroger parking lot. Michael's cell-phone call log confirmed calls to his parents at 4:23 p.m. and 4:29 p.m. on December 12, 2016, shortly before the burglary, as well as multiple calls between Michael and Jordan around the time of the burglary.

{¶ 8} As a result of his investigation, Detective Longworth believed that Jordan was involved in the burglary. For several days, he observed Jordan coming and going between the cream-colored Chrysler, parked in the Kroger parking lot, and the barbershop. On December 20, eight days after the burglary, Detective Longworth and another officer arrested Jordan as he exited a cell-phone store.

{¶ 9} At the time of his arrest, Jordan was carrying his girlfriend's identification and keys that had an apartment number on them. Detective Longworth determined that Jordan was staying with his girlfriend at that apartment. Based on that information, Detective Longworth obtained a warrant to search the apartment for evidence related to the burglary. The search did not uncover evidence that could be definitively linked to the burglary, but officers found and seized approximately $2,100 in cash, as well as heroin, cocaine, an electronic scale, and a handgun. Jordan's drug charges stemmed from the evidence seized.

{¶ 10} Jordan filed a motion to suppress. He argued that his arrest was unconstitutional and that the evidence should be suppressed as the fruit of that constitutional violation. Jordan admitted in his motion, "An arrest without a warrant is constitutionally valid if, at the moment the arrest is made, the arresting officer has probable cause to make it," but he argued that his arrest was not supported by probable cause. At the suppression hearing, Jordan's attorney primarily repeated the argument that the police lacked probable cause to arrest Jordan, but he also stated more broadly that "there was no warrant," even though eight days had elapsed during which Detective Longworth could have obtained one.

{¶ 11} The trial court denied the motion to suppress, and the case proceeded to a jury trial. Jordan was convicted of trafficking in heroin, aggravated trafficking in drugs, possession of heroin, aggravated possession of drugs, and possession of cocaine. After merging allied offenses, the trial court sentenced Jordan to an 11-year prison term and imposed a driver's license suspension.

{¶ 12} Jordan appealed his convictions to the First District Court of Appeals, challenging the trial court's denial of his motion to suppress. The First District held that the trial court did not err by denying Jordan's motion to suppress,

and it affirmed his convictions.[1]  It rejected Jordan's argument that the information known to Detective Longworth at the time of Jordan's arrest did not establish probable cause.  It also rejected Jordan's argument, which Jordan had not raised in his motion to suppress, that his arrest was unlawful because there were no exigent circumstances to justify a warrantless arrest.  *Id.* at ¶ 21.

{¶ 13} This court accepted a discretionary appeal to consider a single proposition of law: "Under R.C. 2935.04, once probable cause is established, a warrantless arrest is unconstitutional if there is unreasonable delay in effecting the arrest.  Whether the delay is reasonable depends upon the circumstances surrounding the delay and the nature of the offense."  Jordan frames his proposition of law in terms of unreasonable delay, but he also variously casts his argument in terms of a requirement of exigent circumstances or of the impracticability of securing an arrest warrant.  Essentially, he asks this court to hold that a police officer is constitutionally required to secure an arrest warrant before conducting an arrest whenever the circumstances demonstrate that it is practicable to do so.

**Analysis**

{¶ 14} The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  Article I, Section 14 of the Ohio Constitution contains virtually identical language.  With respect to felony cases, this court has interpreted Article I, Section 14 of the Ohio Constitution as providing the same protections as the Fourth Amendment.  *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 12, citing *State v. Smith*, 124 Ohio St.3d 163,

---

1.  The court of appeals did, however, remand the case to the trial court for a nunc pro tunc entry to correct a clerical error in the sentencing entry with respect to the length of the imposed license suspension.

2009-Ohio-6426, 920 N.E.2d 949, ¶ 10, fn. 1.[2] Although the Ohio Constitution may provide greater protections than the United States Constitution, we have "harmonize[d] our interpretation" of Article I, Section 14 with the Fourth Amendment "unless there are persuasive reasons" for not doing so. *State v. Robinette*, 80 Ohio St.3d 234, 239, 685 N.E.2d 762 (1997). Jordan offers no basis for treating the provisions differently here. We therefore review and address Jordan's arguments through the lens of the Fourth Amendment.

*A warrantless arrest based on probable cause and conducted in public is reasonable under the Fourth Amendment*

{¶ 15} Jordan frames his proposition of law as presenting a constitutional question that arises upon application of R.C. 2935.04, which states: "When a felony has been committed, or there is reasonable ground to believe that a felony has been committed, any person without a warrant may arrest another whom he has reasonable cause to believe is guilty of the offense, and detain him until a warrant can be obtained."

{¶ 16} Contrary to the premise of the proposition of law this court accepted, the dissent reasons that R.C. 2935.04 is a citizen's-arrest statute that does not apply to law-enforcement officials who are acting within the course and scope of their duties. Rather, it states that the only statutory authority afforded to law-enforcement officers to conduct warrantless arrests is found in R.C. 2935.03, a

---

2. The dissent cites *State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, 39 N.E.3d 496, to claim that Article I, Section 14 of the Ohio Constitution affords greater protections than the Fourth Amendment, but that case involved an unauthorized arrest for a minor misdemeanor. We held, "A traffic stop for a minor misdemeanor made outside a police officer's statutory jurisdiction or authority violates the guarantee against unreasonable searches and seizures established by Article I, Section 14 of the Ohio Constitution." *Id.* at ¶ 26. And we based that holding on our prior statement that " 'Section 14, Article I of the Ohio Constitution provides greater protection than the Fourth Amendment to the United States Constitution against warrantless arrests *for minor misdemeanors*.' " (Emphasis added.) *Id.* at ¶ 21, quoting *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175, ¶ 22. Not only have we never found greater protection regarding *felony* arrests under the Ohio Constitution than that provided by the United States Constitution, but Jordan does not ask us to do so here.

statute that neither Jordan nor the state has cited in their merit briefs. While R.C. 2935.03 admittedly cloaks law-enforcement officers with authority to conduct warrantless arrests in certain situations, that authority does not diminish the applicability of R.C. 2935.04 to law-enforcement officers. Indeed, this court has cited R.C. 2935.04 in numerous cases that involved warrantless arrests conducted by law-enforcement officers. *See, e.g.*, *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 38-39; *State v. Wac*, 68 Ohio St.2d 84, 88, 428 N.E.2d 428 (1981); *State v. Timson*, 38 Ohio St.2d 122, 127, 311 N.E.2d 16 (1974). Yet never once have we articulated the concern—one that ignores the statute's plain application to "any person"—that the dissent raises here.

{¶ 17} R.C. 2935.04 authorizes warrantless arrests for felony offenses. But statutory authority to make an arrest does not mean that the arrest passes constitutional scrutiny. We must therefore determine whether a warrantless arrest made in accordance with R.C. 2935.04 is consistent with the protections afforded by the Fourth Amendment.

{¶ 18} " '[T]he underlying command of the Fourth Amendment is always that searches and seizures be reasonable.' " *Wilson v. Arkansas*, 514 U.S. 927, 931, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 337, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). An arrest is " 'quintessentially a seizure,' " that is subject to the Fourth Amendment and that must be reasonable. *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), quoting *Watson*, 423 U.S. at 428, 96 S.Ct. 820, 46 L.Ed.2d 598 (Powell, J., concurring).

{¶ 19} The constitutionality of an arrest depends on whether, at the moment the arrest was made, the officers had probable cause to make it. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Probable cause is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.' " (Brackets added

in *Gerstein*.) *Gerstein v. Pugh*, 420 U.S. 103, 111-112, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), quoting *Beck* at 91. When a warrantless arrest is challenged on constitutional grounds, the court must determine whether the facts known to the officers at the time of the arrest would " 'warrant a man of reasonable caution in the belief' that an offense has been committed." *Beck* at 96, quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925). An arrest that is based on probable cause is a reasonable intrusion under the Fourth Amendment, *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), whereas an arrest that is not supported by probable cause constitutes an unreasonable seizure, *Donovan v. Thames*, 105 F.3d 291, 297-298 (6th Cir.1997), citing *Beck* at 90-91.

{¶ 20} The use of probable cause as the standard for making an arrest "represents a necessary accommodation between the individual's right to liberty and the State's duty to control crime." *Gerstein* at 112. It "is a practical, nontechnical conception [that affords] the best compromise * * * for accommodating * * * often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

{¶ 21} In *Gerstein*, the United States Supreme Court stated, "To implement the Fourth Amendment's protection against unfounded invasions of liberty and privacy, the Court has required that the existence of probable cause be decided by a neutral and detached magistrate whenever possible." *Id.* at 112. That does not, however, mean that an arrest warrant is necessary in all circumstances. Even though requiring that a neutral and detached magistrate review in advance a police officer's factual justification for an arrest would ensure maximum protection of individual rights, the Supreme Court noted that "it has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant."

*Id.* at 113, citing *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), and *Trupiano v. United States*, 334 U.S. 699, 705, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948). But when a police officer's assessment of probable cause provides the justification for a warrantless arrest, the Fourth Amendment requires a prompt, postarrest, judicial determination of probable cause as a prerequisite to extended restraint of the arrestee's liberty.[3] *Id.* at 113-114, 125.

{¶ 22} The United States Supreme Court returned to the issue of warrantless felony arrests in *Watson*, in which it upheld, as consistent with the Fourth Amendment, a warrantless arrest that was based on probable cause and that was made in public. *See* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598. The court stated that nothing in its precedent indicated that the Fourth Amendment required a warrant to make a valid felony arrest, and "[i]ndeed, the relevant prior decisions are uniformly to the contrary." *Id.* at 416-417. It characterized that precedent as "reflect[ing] the ancient common-law rule" that a police officer may make a warrantless arrest for a felony when the officer has reasonable grounds for making the arrest. *Id.* at 418. In light of that longstanding rule, the court declined to transform a judicial preference for arrest warrants into a constitutional requirement. *Id.* at 423.

{¶ 23} *Watson* does not, however, stand for the proposition that the police have unlimited authority to effect a warrantless felony arrest as long as they have probable cause. Other circumstances might compel the police to take additional steps in order to ensure the arrest will survive constitutional scrutiny. For example, several years after *Watson*, the United States Supreme Court considered whether and under what circumstances an officer could enter a suspect's home to make a warrantless arrest in a manner consistent with the Fourth Amendment. *See Payton*,

---

3. Jordan has not challenged the postarrest proceedings in his case, and we need not address them here.

445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639. In *Payton*, the court recognized that " 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed,' " *id.* at 585-586, quoting *United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972), and that unlike a warrantless seizure conducted in a public place, a warrantless seizure conducted inside a home is presumptively unreasonable, *id.* at 586-587. It concluded that "the Fourth Amendment has drawn a firm line at the entrance to the house" that "may not reasonably be crossed without a warrant" unless exigent circumstances exist. *Id.* at 590. Because Jordan was arrested in public, the rule announced in *Payton* is inapplicable here. Instead, *Watson* controls.

*Neither exigent circumstances nor the impracticability of obtaining a warrant is required to justify a warrantless felony arrest that is supported by probable cause and that is conducted in public*

{¶ 24} Jordan no longer argues that the arresting officers did not have probable cause to believe that he was involved in the burglary of the Lockes' home. Rather, his proposition of law concerns the constitutionality of a warrantless arrest "once probable cause is established."

{¶ 25} In support of his position that a police officer is constitutionally required to obtain an arrest warrant any time it is practicable under the circumstances to do so, Jordan relies on *State v. Heston*, 29 Ohio St.2d 152, 280 N.E.2d 376 (1972), in which this court stated:

> "Under certain circumstances, a warrant need not be obtained in order to render an arrest valid. The arresting officer must have probable cause to believe that a felony was committed by defendant, and the circumstances must be such as to make it impracticable to secure a warrant. *Johnson v. United States*, 333 U.S. 10 [68 S.Ct. 367, 92 L.Ed 436 (1948)]; *Jones v. United States*,

357 U.S. 493, 499, 500 [78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958)];
*Chapman v. United States*, 365 U.S. 610, 615 [81 S.Ct. 776, 5
L.Ed.2d 828 (1961)].”

*Id.* at 155, quoting *State v. Woodards*, 6 Ohio St.2d 14, 20, 215 N.E.2d 568 (1966). But *Heston* is factually distinguishable from this case. The arrest challenged in *Heston* was not conducted in public. Rather, the police arrested Heston inside private property, based on information that Heston had committed a felony, that he intended to leave town to evade apprehension, and that one of Heston's alleged accomplices had already fled. *Id.* Each of the cases that the United States Supreme Court cited in *Heston* in support of an impracticability requirement likewise involved nonpublic searches or seizures. *See Johnson* at 16-17; *Jones* at 495; *Chapman* at 610.

{¶ 26} Jordan argues that the trial court and the First District should have followed *Heston*'s lead and determined whether the circumstances surrounding his arrest made it impractical for the officers to have secured an arrest warrant, but that argument ignores the innate difference between a warrantless arrest that occurs in public and a warrantless entry into private property for the purpose of making a felony arrest. Fourth Amendment jurisprudence consistently accords law-enforcement officers greater latitude when they exercise their duties in public places. *Florida v. White*, 526 U.S. 559, 565, 119 S.Ct. 1555, 143 L.Ed.2d 748 (1999). In this context, "although a warrant presumptively is required for a felony arrest in a suspect's home, the Fourth Amendment permits warrantless arrests in public places where an officer has probable cause to believe that a felony has occurred." *Id.*, citing *Watson*, 423 U.S. at 416-424, 96 S.Ct. 820, 46 L.Ed.2d 598.

{¶ 27} Even if indistinguishable on its facts, *Heston*'s remaining precedential value is, at best, questionable with respect to warrantless arrests in public because it predates *Watson,* in which the United States Supreme Court

refused to require the government to obtain a warrant for a public arrest even though there was "concededly" time to do so. 423 U.S. at 414, 96 S.Ct. 820, 46 L.Ed.2d 598. While Jordan has suggested that we should read *Watson* narrowly, as applying only to cases involving exigent circumstances, that reading of *Watson* is directly contrary to the broad language the Supreme Court employed. The Supreme Court expressly held in *Watson* that the Fourth Amendment does *not* require exigent circumstances or impracticability of obtaining a warrant before police may conduct a warrantless public arrest upon probable cause. *Id.* at 423-424. It noted, "[T]he judgment of the Nation and Congress has for so long been to authorize warrantless public arrests on probable cause rather than to encumber criminal prosecutions with endless litigation with respect to the existence of exigent circumstances, whether it was practicable to get a warrant, whether the suspect was about to flee, and the like." *Id.*

{¶ 28} Since *Watson* was decided, this court has held, clearly and without qualification, "A warrantless arrest that is based upon probable cause and occurs in a public place does not violate the Fourth Amendment." *Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, at ¶ 66, citing *Watson*. And when evaluating a constitutional challenge to a warrantless public arrest in *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 38, we considered only whether there was probable cause to support the arrest; because the police had probable cause, we rejected the defendant's challenge, *id.* at ¶ 40-41. We have never held that something more than probable cause is required to render constitutional a felony arrest conducted in public. And we decline to do so today. The First District appropriately followed precedent in affirming the denial of Jordan's motion to suppress.

{¶ 29} Contrary to the First District's decision in this case, the Second District Court of Appeals has held, albeit inconsistently, that not only must a warrantless arrest be supported by probable cause to pass constitutional muster, but

"it must also be shown that obtaining an arrest warrant beforehand was impracticable under the circumstances, i.e., that exigent circumstances exist." *State v. VanNoy*, 188 Ohio App.3d 89, 2010-Ohio-2845, 934 N.E.2d 413, ¶ 23 (2d Dist.), citing *State v. Jones*, 183 Ohio App.3d 839, 2009-Ohio-4606, 919 N.E.2d 252, ¶ 12 (2d Dist.), citing *Heston*, 29 Ohio St.2d 152, 280 N.E.2d 376, at paragraph two of the syllabus, and *Woodards*, 6 Ohio St.2d 14, 215 N.E.2d 568. *But see State v. Short*, 2d Dist. Montgomery No. 27712, 2018-Ohio-3202, ¶ 18, quoting *Brown* at ¶ 66 (" '[a] warrantless arrest that is based upon probable cause and occurs in public does not violate the Fourth Amendment' "). For the reasons already stated in this opinion, we reject the Second District's holding in *VanNoy* as contrary to precedent from both this court and the United States Supreme Court.

{¶ 30} Finally, even accepting that the existence of probable cause generally makes a public felony arrest constitutionally permissible, Jordan argues that the general rule should not apply when there is an unreasonable delay between the establishment of probable cause and the arrest itself. That argument, however, amounts to nothing more than a repackaging of the previously rejected argument that a warrantless felony arrest made in public is reasonable only if there are exigent circumstances that make it impractical for the police to obtain an arrest warrant.

{¶ 31} Jordan likens the probable cause necessary to justify an arrest to that required to justify a search for evidence, and he unpersuasively suggests that any probable cause to believe that he was involved in the burglary of the Lockes' home had gone stale by virtue of the eight-day delay between the burglary and his arrest. Probable cause to support the issuance of an arrest warrant does not grow stale in the same ways as the probable cause that is necessary to support a warrant to search for particular evidence in a particular place. *Watson*, 423 U.S. at 432, 96 S.Ct. 820, 46 L.Ed.2d 598, fn. 5 (Powell, J., concurring). Probable cause to believe that particular objects exist in a particular place does not last indefinitely because delay in acting upon such probable cause affords opportunities for the evidence to be

moved, hidden, or destroyed. On the other hand, there is nothing inherent in a delay that would make a suspect's involvement in a criminal offense less probable. *See United States v. Haldorson*, 941 F.3d 284, 292 (7th Cir.2019) ("It is the rare case where 'staleness' will be relevant to the legality of a warrantless arrest. When there is a reasonable belief that someone has committed a crime, time by itself does not make the existence of that fact any less probable" [footnote deleted]). Further investigation or circumstances could discredit information that supports the belief that the suspect has committed a felony, but Jordan has identified no facts that came to light between the time of the burglary and the time of his arrest that would have discredited the information that formed the basis of the officers' probable cause for believing that he was involved in the burglary. Accordingly, the short delay in this case did not affect the existence of probable cause so as to render Jordan's arrest unreasonable.

**Conclusion**

{¶ 32} In accordance with United States Supreme Court precedent, we again hold that a warrantless arrest, conducted in public and with probable cause to believe that the arrestee has committed a felony, is reasonable and does not violate the Fourth Amendment to the United States Constitution or Article I, Section 14 of the Ohio Constitution. We further hold that neither the United States nor the Ohio Constitution requires a showing of exigent circumstances or of the impracticability of obtaining an arrest warrant to justify a warrantless public arrest supported by probable cause. Because Jordan does not contest the lower courts' determinations that the arresting officers had probable cause to believe that he had committed a felony when they arrested him in public, we conclude that the arrest was constitutionally valid. Accordingly, we affirm the judgment of the First District Court of Appeals.

Judgment affirmed.

KENNEDY, FISCHER, and DEWINE, JJ., concur.

DONNELLY, J., concurs in judgment only.

STEWART, J., dissents, with an opinion joined by BRUNNER, J.

_____

**STEWART, J., dissenting.**

{¶ 33} The majority opinion concludes that law-enforcement officers are statutorily authorized to conduct warrantless arrests pursuant to R.C. 2935.04. With that conclusion forming the basis for its analysis, the majority then goes on to hold that warrantless arrests based on probable cause do not violate either the Fourth Amendment to the United States Constitution or Article I, Section 14 of the Ohio Constitution. I disagree and therefore dissent.

{¶ 34} As a preliminary matter, the language of R.C. 2935.04, when read in pari materia with other provisions of R.C. Chapter 2935, reveals that R.C. 2935.04 is a citizen's-arrest statute. As such, it does not authorize law-enforcement officers to conduct warrantless arrests. Although law-enforcement officers do have statutory authority to conduct warrantless arrests, the authority derives from R.C. 2935.03, not R.C. 2935.04, and it is limited to the statutorily enumerated scenarios contained therein. Accordingly, the foundation upon which the majority builds its analysis is flawed.

{¶ 35} Nevertheless, the language of both R.C. 2935.03 and 2935.04 indicates a requirement that an arrest warrant be obtained prior to an arrest *unless doing so is impracticable*. Because the facts in this case demonstrate that the officers had ample time to secure a warrant before arresting appellant, LeAndre Jordan, I conclude that the officers acted outside of their statutory authority to arrest and in violation of Article I, Section 14 of the Ohio Constitution. *See State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, 39 N.E.3d 496, ¶ 23 ("Article I, Section 14 of the Ohio Constitution affords greater protection than the Fourth Amendment against searches and seizures conducted by members of law enforcement who lack authority to make an arrest").

**R.C. 2935.04 is a Citizen's-Arrest Statute**

{¶ 36} R.C. 2935.04 states:

> When a felony has been committed, or there is reasonable ground to believe that a felony has been committed, any person without a warrant may arrest another whom he has reasonable cause to believe is guilty of the offense, and detain him until a warrant can be obtained.

Although R.C. 2935.04 states that "any person" may arrest, it is unclear from the language of the enactment whether the term "any person" was meant to include law-enforcement officials acting within the normal course and scope of their duties. When read in pari materia with other provisions of R.C. Chapter 2935, however, it becomes clear that R.C. 2935.04 was not meant to apply to law-enforcement personnel acting in their official capacity. This is because R.C. 2935.03 specifically authorizes the police, and other types of law-enforcement officials, to conduct warrantless arrests in certain circumstances.

{¶ 37} Under R.C. 2935.03(A)(1), members of law enforcement are authorized to arrest without a warrant "a person found violating" a law within the limits of the political subdivision in which they are appointed, employed, or elected. This court has interpreted the phrase "found violating" to mean that law enforcement are authorized to arrest when they view the commission of a crime. *See State v. Lewis*, 50 Ohio St. 179, 189, 33 N.E. 305 (1893) (interpreting the precursor statute to R.C. 2935.03(A)(1) and stating: "Section 7129, Rev[ised] St[atutes], provides for the arrest of persons 'found violating' a law or ordinance. Found by whom? The statute does not expressly declare, but when the rules of the common law upon this subject are considered, it is clear that the legislature meant, found by the officer who attempts to make the arrest"); 1940 Ohio Atty.Gen.Ops.

No. 1940-2735 (equating the term "found violating" with the term "on view" by the officer); *State v. Henderson*, 51 Ohio St.3d 54, 56, 554 N.E.2d 104 (1990) (discussing the facts and holding from *Lewis* and using the term "in the officer's presence"). We have also interpreted R.S. 7129, the precursor statute to R.C. 2935.03, as authorizing law enforcement to execute a warrantless arrest when law enforcement may not have viewed the commission of a crime but nevertheless have probable cause to believe the person subject to arrest is presently in the act of committing a crime. *Ballard v. State*, 43 Ohio St. 340, 1 N.E. 76 (1885), paragraph two of the syllabus (interpreting R.S. 7129 to permit an officer "without warrant, to arrest a person found on the public streets of the corporation carrying concealed weapons contrary to law, *although he has no previous personal knowledge of the fact, if he acts bona fide, and upon such information as induces an honest belief that the person arrested is in the act of violating the law*" [emphasis added]); *Houck v. State*, 106 Ohio St. 195, 198-199, 140 N.E. 112 (1922) (same holding as in *Ballard*); *Porello v. State*, 121 Ohio St. 280, 284, 168 N.E. 135 (1929) (same holding as in *Ballard*).[4] The officer's authority to conduct a warrantless arrest based on the officer's observation of the commission of the offense or reliable information that supports a bona fide belief that a person is presently engaging in the commission of a crime even if not based on the officer's own observations—i.e., probable cause—extends to both felonies and misdemeanors, *see* R.C. 2935.03(A)(1) (authorizing warrantless arrest for violations of "a law of this state, an ordinance of a municipal corporation, or a resolution of a township").

---

4. In *Ballard*, this court did not explicitly equate probable cause with "acts bona fide, and upon such information as induces an honest belief that the person arrested is in the act of violating the law," *id.* at paragraph two of the syllabus. However, we later made that connection in *Houck* when we noted that the magistrate found that the "evidence tended to show the good faith of the marshal and that he was acting upon probable cause," *id.* at 198. Thus, all that was left to determine in *Houck* was whether the marshal needed to obtain a warrant prior to executing a search and arrest, when the marshal had probable cause to believe that the person was presently committing a crime. Applying the holding in *Ballard*, we determined that the marshal did not need a warrant. *Houck* at 200.

{¶ 38} By contrast, R.C. 2935.03(B)(1) limits an officer's warrantless arrest authority to when the officer has "reasonable ground to believe" that an offense *has been* committed within the officer's jurisdiction—that is, that the commission of the offense has already occurred—and "reasonable cause to believe" that the person subject to arrest is guilty of committing the offense—that is, information that may not have resulted from the officer directly observing the crime but is nonetheless sufficient and reliable information giving rise to the belief that the person to be arrested is the offender. In such instances, a police officer still may arrest without a warrant but only if the offense is one of the following: an offense of violence, the offense of criminal child enticement as defined in R.C. 2905.05, the offense of public indecency as defined in R.C. 2907.09, the offense of domestic violence as defined in R.C. 2919.25, the offense of violating a protection order as defined in R.C. 2919.27, the offense of menacing by stalking as defined in R.C. 2903.211, the offense of aggravated trespass as defined in R.C. 2911.211, a theft offense as defined in R.C. 2913.01, or a felony drug-abuse offense as defined in R.C. 2925.01. R.C. 2935.03(B)(1). Thus, it can be said that an officer's more limited authority to arrest in instances in which the commission of the offense is a fait accompli extends only to those offenses for which there may be a high risk that the suspect poses an immediate threat to an individual, the public, or himself or that evidence or stolen property will be lost if the suspect is not apprehended straightaway—i.e., offenses of violence,[5] some of the more serious misdemeanor offenses, and theft and felony drug-abuse offenses.

---

5. R.C. 2901.01(A)(9) defines "offense of violence" and lists the offenses falling under this category. Most of these offenses are felony offenses. Included within the list is R.C. 2911.12, burglary, the offense for which Jordan was arrested although not ultimately prosecuted. Thus, based solely on the offense type, the police would have been authorized under R.C. 2935.03(B)(1) to arrest Jordan without first obtaining a warrant. However, and as explained in greater detail below, the police exceeded their authority by failing to seek an arrest warrant when they had more than enough time to do so, there was no apparent reason to believe that Jordan would abscond, and there was no other evident exigency.

{¶ 39} Concluding, as the majority does, that R.C. 2935.04 authorizes police officers to arrest without a warrant when *any felony* has been committed and there is reasonable cause to believe that the person to be arrested is guilty of the offense renders the felony-arrest limitations in R.C. 2935.03(B)(1) wholly superfluous. This cannot be countenanced. It is our duty when interpreting statutes to ensure that related and coexisting statutes are harmonized and that each be given full application except in the rare event that "they are irreconcilable and in hopeless conflict." *United Tel. Co. of Ohio v. Limbach*, 71 Ohio St.3d 369, 372, 643 N.E.2d 1129 (1994); *see also* R.C. 1.51 (when there is a conflict between a general and a special provision, the provisions shall be construed to give effect to both if possible; if not possible, the special provision prevails unless the general provision is enacted later in time and it is the manifest intent of the legislature for the general provision to prevail); *State v. Chippendale*, 52 Ohio St.3d 118, 120, 556 N.E.2d 1134 (1990) ("It is a well-established principle of statutory construction that specific statutory provisions prevail over conflicting general statutes. In recognition of this principle, the General Assembly enacted R.C. 1.51 * * *").[6] The majority's interpretation of

---

6. R.C. 2935.04 has remained unchanged since it was enacted in 1929. *See Am.S.B. No. 8, 113 Ohio Laws 123, 140 (codifying the Code of Criminal Procedure of Ohio and showing the language of G.C. 13432-2, which is the same as present-day R.C. 2935.04); see also Am.H.B. No. 1, 125 Ohio Laws 7 (recodifying the entire General Code into the Ohio Revised Code in 1953).* By contrast, R.C. 2935.03—specifically the provisions of subdivision (B)—has undergone numerous changes since 1953. Subdivision (B) did not exist in 1953 when the General Code was recodified into the Revised Code, let alone in 1929 when the language of R.C. 2935.04 was first introduced. Many of the provisions of R.C. 2935.03(B) were first enacted in the 1970s, with significant revisions continuing through the 1980s and 1990s. *See* Am.Sub.S.B. No. 29, 132 Ohio Laws, Part II, 2124; Part I, 959; *see also* Am.Sub.H.B. No. 511, 134 Ohio Laws 1866, 1990; Am.Sub.H.B. No. 300, 136 Ohio Laws, Part II, 2311, 2331; Am.Sub.H.B. No. 835, 137 Ohio Laws, Part II, 3524, 3532; Am.Sub.H.B. No. 588, 137 Ohio Laws, Part II, 3011, 3015; Am.Sub.S.B. No. 355, 138 Ohio Laws 1179; Sub.H.B. No. 129, 140 Ohio Laws, Part I, 2060, 2066, 2075; Am.Sub.S.B. No. 321, 140 Ohio Laws, Part I, 1192, 1215; Sub.S.B. No. 33, 141 Ohio Laws, Part I, 23; Am.Sub.S.B. No. 356, 141 Ohio Laws, Part I, 967, 970, 992; Am.H.B. No. 284, 141 Ohio Laws, Part II, 3101, 3109, 3112; Sub.H.B. No. 231, 142 Ohio Laws, Part II, 2635, 2706, 2952; Am.Sub.H.B. No. 261, 142 Ohio Laws, Part II, 3100, 3110, 3126; Sub.H.B. No. 708, 142 Ohio Laws, Part III, 4853, 5007, 5176; Am.Sub.S.B. No. 82, 145 Ohio Laws, Part I, 879, 886; Sub.H.B. No. 42, 145 Ohio Laws, Part II, 2837, 2740; Am.Sub.H.B. No. 335, 145 Ohio Laws, Part III, 5451, 5474. Accordingly, there can be no debate that the provisions of R.C. 2935.03(B) were adopted at a date in time later than those

the law places R.C. 2935.03 and 2935.04 in direct conflict and, worse still, renders the more specific provisions of R.C. 2935.03(B)(1) largely ineffective. To avoid this result, we should interpret R.C. 2935.04 as authorizing only private citizens and those not acting under color of law as law-enforcement officials to make warrantless arrests, when there is reasonable cause to believe that the person to be arrested is guilty of having committed a felony offense.

{¶ 40} The majority justifies its decision not to engage in any critical analysis of the two statutes by stating first that the parties did not raise this issue to this court and second that this court has applied R.C. 2935.04 to police officers in other cases. While these statements are true, they certainly do not preclude the majority from analyzing the statutes now. In *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 279, 617 N.E.2d 1075 (1993), we stated:

> As a general rule, this court will not consider arguments that were not raised in the courts below. *See State v. 1981 Dodge Ram Van* (1988), 36 Ohio St.3d 168, 170, 522 N.E.2d 524, 526. The waiver doctrine, however, is not absolute. *Id.* at 169-170, 522 N.E.2d at 526; *In re M.D.* (1988), 38 Ohio St.3d 149, 527 N.E.2d 286. When an issue of law that was not argued below is implicit in another issue that was argued and is presented by an appeal, we may consider and resolve that implicit issue. To put it another way, if we

---

contained in R.C. 2935.04. Furthermore, it cannot be said that the legislature manifested an intent that the general provisions in R.C. 2935.04 prevail over the more specific provisions of R.C. 2935.03(B). It would make no sense for the legislature to spend time painstakingly amending the provisions of R.C. 2935.03(B) if R.C. 2935.04 already gives law-enforcement officials carte blanche to arrest without a warrant when there are reasonable grounds to believe that *any* felony, regardless of type, has been committed.

must resolve a legal issue that was not raised below in order to reach

a legal issue that was raised, we will do so.

In the recent past, when we have encountered a predicate question that, as a practical matter, should be answered before the question presented by the proposition of law is considered, we have taken appropriate measures to address the predicate question. *See State v. Jones*, 162 Ohio St.3d 542, 2020-Ohio-4031, 166 N.E.3d 1096, ¶ 3 (declining to resolve the proposition of law accepted for review and instead remanding to the court of appeals to address the predicate question of whether defendant's waiver of counsel was knowing, intelligent, and voluntary); *see also State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248 (overruling our void-sentence cases even though the parties did not raise a facial challenge to the void-sentence doctrine on appeal).

{¶ 41} The question presently before the court presumes that R.C. 2935.04 applies to law-enforcement personnel but then goes on to ask whether the United States or Ohio Constitutions require law-enforcement officials to obtain an arrest warrant if possible. Before answering this question, however, we need to determine whether the presumption on which it relies is correct. This court has never addressed, let alone reconciled, the provisions of R.C. 2935.03 as compared to those in R.C. 2935.04. And given the prime opportunity to do so here, the court conveniently declines. As pointed out in this dissent, when R.C. 2935.03 and 2935.04 are read in pari materia, one cannot help but conclude that R.C. 2935.04 does not authorize police action at all. That this court may have previously taken for granted that R.C. 2935.04 applies to the police does not absolve us of our obligation to correct that mistake now that the issue has been brought to our attention.

**Neither R.C. 2935.03 nor R.C. 2935.04 Authorizes a Warrantless Arrest if an Arrest Warrant Could Have Been Obtained; Arresting Without Authority to Arrest Violates the Constitution**

{¶ 42} R.C. 2935.04 does not authorize police to conduct a warrantless arrest. Rather, law enforcement's authority to arrest without a warrant derives solely from the more limited terms of R.C. 2935.03. But both statutes contain an additional constraint on the authority to arrest beyond simply requiring probable cause to do so[7]—one that the officers in this case completely ignored. When there is reasonable cause to believe that a person has committed an offense, both R.C. 2935.03(B)(1) and 2935.04 authorize a warrantless arrest and detention of that person "until a warrant can be obtained." This clause, "until a warrant can be obtained," certainly stands for the fact that the person executing the arrest must, within a reasonable amount of time after the arrest, secure a warrant that authorizes the continued arrest and detention. *Compare* R.C. 2935.05 ("When a person named in section 2935.03 of the Revised Code has arrested a person without a warrant, he shall, without unnecessary delay, take the person arrested before a court or magistrate having jurisdiction of the offense, and shall file or cause to be filed an affidavit describing the offense for which the person was arrested") *and* R.C. 2935.06 ("A private person who has made an arrest pursuant to section 2935.04 of

---

7. R.C. 2935.03(B)(1) and 2935.04 embrace the federal and state constitutional requirements that arrests be supported by probable cause, by authorizing warrantless arrests only when "there is reasonable ground to believe" that an offense has been committed and "reasonable cause to believe" that the person to be arrested is guilty of the offense. *See Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), quoting *McCarthy v. De Armit*, 99 Pa. 63, 69 (1881) (" 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt' "); *see also State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 38-39 (equating the phrases "reasonable ground to believe" and "reasonable cause to believe," found in R.C. 2935.04, with probable cause). Although in *Elmore* we correctly found R.C. 2935.04's "reasonable belief" language to be synonymous with probable cause, we nevertheless applied R.C. 2935.04 to a warrantless arrest made by law-enforcement officers—like the majority opinion does in this case. However, just like the majority opinion here, this court in *Elmore* did not address how R.C. 2935.04 can apply to police when the statute is read in pari materia with R.C. 2935.03.

the Revised Code or detention pursuant to section 2935.041 of the Revised Code shall forthwith take the person arrested before the most convenient judge or clerk of a court of record or before a magistrate, or deliver such person to an officer authorized to execute criminal warrants who shall, without unnecessary delay, take such person before the court or magistrate having jurisdiction of the offense. The officer may, but if he does not, the private person shall file or cause to be filed in such court or before such magistrate an affidavit stating the offense for which the person was arrested") *with* R.C. 2935.08 ("Upon the filing of an affidavit or complaint as provided in sections 2935.05 or 2935.06 of the Revised Code such judge, clerk, or magistrate shall forthwith issue a warrant to the peace officer making the arrest, or if made by a private person, to the most convenient peace officer who shall receive custody of the person arrested. All further detention and further proceedings shall be pursuant to such affidavit or complaint and warrant"); *see also* Crim.R. 4(E)(2); *State v. Gedeon*, 9th Dist. Summit No. 29153, 2019-Ohio-3348, ¶ 36 (defendant entitled to a prompt judicial determination of probable cause in the wake of warrantless arrest); *Gerstein v. Pugh*, 420 U.S. 103, 113-114, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

{¶ 43} But importantly, regarding the question now before the court, the language "until a warrant can be obtained" also presupposes that there was not time, or that it was otherwise impracticable, to obtain an arrest warrant prior to the arrest. Our case law has long supported this understanding and indeed could not be clearer. In our discussion of R.S. 7129 and 7130—precursors to present-day R.C. 2935.03 and 2935.04, respectively—we stated:

Nor do we deny the power of officers, and even private persons, to arrest criminals, under some circumstances, without warrant or charge on oath or affirmation. This power is recognized in our statutes (66 Ohio L. 291; 74 Ohio L. 317; Rev. Stats. §§ 7129,

7130), has long existed, and is not prohibited by any constitutional provision. But these statutes provide, in effect, that the person so arrested can only be detained "until a legal warrant can be obtained," and such warrant can only be issued on oath or affirmation. *In other words, such power to detain without warrant exists to the end that there may not be a failure of justice through the escape of criminals, and the power is measured by, and ends with, the necessity on which it is based.*

(Emphasis added.) *Eichenlaub v. State*, 36 Ohio St. 140, 143-144 (1880). In *Leger v. Warren*, we made similar pronouncements:

*The right to make arrests without warrant is conferred by the statute in order to prevent the escape of criminals where that is likely to result from delay in procuring a writ for their apprehension; and it was not the purpose to dispense with the necessity of obtaining such writ as soon as the situation will reasonably permit.* To afford protection to the officer or person making the arrest, the authority must be strictly pursued; and no unreasonable delay in procuring a proper warrant for the prisoner's detention *can be excused or tolerated. Any other rule would leave the power open to great abuse and oppression.*

(Emphasis added.) 62 Ohio St. 500, 508, 57 N.E. 506 (1900); *see also Munzebrock v. State*, 10 Ohio Dec.Rep. 277, 278, 1886 WL 2635 (C.P.1886) ("An arrest without a warrant has never been lawful except in such cases as is expressly authorized by statute, on the ground that public security required it under certain circumstances").

{¶ 44} In this case, the police acted outside of their authority to execute a warrantless arrest when they had ample time to procure a warrant prior to Jordan's arrest but failed to do so. There was no exigency that justified their conduct.

{¶ 45} There were eight days between when the burglary offense was committed on December 12, 2016, and when the police arrested Jordan without a warrant on December 20, 2016. All information available to the police, which the lower courts concluded amounted to probable cause, was known to the officers within a couple of days after the burglary.

{¶ 46} On the day of the burglary, the victims recounted to Detective Longworth the reasons that they suspected their son Michael and his friend "Dre"— later determined to be Jordan—had been responsible for the burglary. They also told the detective exactly where Jordan worked and what type of car he drove. Detective Longworth was able to locate a vehicle fitting the description provided by the victims parked outside of Jordan's workplace and observed Jordan leaving his work and getting into that vehicle. A couple of days later, while interviewing Michael, Detective Longworth learned that Michael and Jordan were together on the day of the burglary. From phone records, Detective Longworth learned that Michael had made several calls to Jordan around the time of the offense. Detective Longworth testified that he then spent several days simply observing Jordan getting in and out of the car near his place of employment until finally, the officers decided to execute a warrantless arrest as Jordan was leaving a cell-phone store on December 20, 2016. It is important to note that nothing happened during these several days that would have justified law enforcement's failure to get a warrant. The commission of the burglary was long over and nothing about Jordan's behavior would have indicated to the police that he was then engaged in any criminal activity or that he would be likely to flee in the time it might have taken to get a warrant. In fact, Jordan's behavior of showing up to work and leaving around the same time each day, tended to show the opposite—that he was not then engaged in criminal

activity and had responsibilities associated with his employment that required him to maintain a steady schedule. And because the police knew where he worked and understood his schedule, the police would have known exactly where to find him once they obtained an arrest warrant. It is clear that under the circumstances, the police had ample time to submit the information they had to a neutral and detached judicial officer and if that judicial officer found the information sufficient to issue an arrest warrant, secure one to make the arrest. No exigency existed at the time of Jordan's arrest that required it be made without a warrant. The officers therefore completely bypassed the protections afforded citizens by the law requiring arrest warrants and acted outside of their statutorily prescribed warrantless-arrest authority when they arrested Jordan.

{¶ 47} In *State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, 39 N.E.3d 496, ¶ 23, we recognized that Article I, Section 14 of the Ohio Constitution protects against searches and seizures conducted by members of law enforcement who lack authority to make an arrest. Specifically, we noted our precedent that "[a]n arrest made in violation of a statute limiting the police officer's authority to make the arrest infringes on '[t]he right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures' as guaranteed by Article I, Section 14 of the Ohio Constitution." *Id.* at ¶ 18, quoting Ohio Constitution, Article I, Section 14. Under our decision in *Brown*, it is clear that in acting outside of their arrest authority, the police here violated the rights conferred to Jordan under Article I, Section 14 of the Ohio Constitution. Today's majority opinion not only sanctions this constitutional violation; it also eliminates the need for police officers to ever obtain an arrest warrant. Whereas before today's decision, the police were required to submit evidence of a suspected crime to a neutral and detached judicial officer for a determination whether the information satisfied the constitutional requirements for an arrest warrant to issue, the police can now bypass this judicial review without reason or exigent circumstance and

26

need only wait until a person who is suspected of committing a crime leaves his home or otherwise ventures into the public sphere. Once in public, that person can be arrested under this newly created type of "lawful" arrest, regardless of the quantity or the quality of the information the police officers have, and the person arrested can then be subjected to all other law-enforcement procedures, some of which are extremely invasive, that flow from an arrest.

### Conclusion

{¶ 48} For the foregoing reasons, I find that the police acted outside of their statutory authority when they made a warrantless arrest of Jordan even though they had ample time to secure an arrest warrant. In doing so, the police violated Article I, Section 14 of the Ohio Constitution. Accordingly, I would reverse the decision of the court of appeals.

BRUNNER, J., concurs in the foregoing opinion.

————————————

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Philip R. Cummings, Assistant Prosecuting Attorney, for appellee.

Raymond T. Faller, Hamilton County Public Defender, and Sarah E. Nelson, Assistant Public Defender, for appellant.

Ron O'Brien, former Franklin County Prosecuting Attorney, and Steven L. Taylor, Assistant Prosecuting Attorney, urging affirmance for amicus curiae Ohio Prosecuting Attorneys Association.

Timothy Young, Ohio Public Defender, and Patrick T. Clark, Assistant Public Defender, urging reversal for amicus curiae Office of the Ohio Public Defender.

————————————